UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 FEB -1 A 11: 36

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| KERRY M. CASTELLO,<br><br>          Plaintiff,<br><br>     vs.<br><br>SUSAN J. MARTIN, in her individual and official capacity as Director of the Department of Correction, Health Services Division; AARON LAZARE, M.D., in his individual and official capacity as Chancellor and Dean of the University of Massachusetts Medical School; ARTHUR BREWER, M.D., in his individual and official capacity as Director of the UMass Correctional Health Program; DONNA JURDAK, R.N., in her individual and official capacity as Health Services Administrator at the Massachusetts Correctional Institution Norfolk;<br><br>          Defendants. | CIVIL ACTION<br><br><br><br><br><br>VERIFIED COMPLAINT |

## INTRODUCTION

1.    The Plaintiff, a pro se prisoner, brings this action pursuant to 42 U.S.C. § 1983 seeking damages and injunctive relief because the defendants have failed to provide him with medications recommended by his doctors for the treatment of his chronic Hepatitis C infection.  The Plaintiff alleges that the defendants' acts and omissions constitute a deliberate indifference to his serious medical needs.  As a result, the Plaintiff has suffered damage to his liver.  He has suffered and continues to suffer from the symptoms of the disease, and he is being subjected to a substantial risk of serious permanent injury or death.

2.    Defendants' deliberate indifference to the Plaintiff's

serious medical needs violates and continues to violate the
Plaintiff's right, guaranteed under the Eighth Amendment to the
United States Constitution and made applicable to the state
through the Fourteenth Amendment, to be free from cruel and
unusual punishment. Accordingly, defendants are liable to the
Plaintiff under 42 U.S.C. § 1983. Additionally, defendants have
violated the Americans With Disabilities Act, 42 U.S.C. § 12132
by virtue of excluding the Plaintiff from receipt of services
in the form of medical treatment and education based on budget
constraints and because he is a prisoner with an HCV disability.

**JURISDICTION AND VENUE**

3.    This Court has jurisdiction over the Plaintiff's federal
claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

4.    Venue is proper in this district pursuant to 28 U.S.C.
§ 1391(b)(2) because events giving rise to the claims occurred in
the eastern region of Massachusetts.

**THE PARTIES**

5.    Plaintiff Kerry M. Castello ("Castello") is a citizen
of the state of Massachusetts, residing therein at the Norfolk
State Prison, 2 Clark Street, P.O. Box 43, Norfolk, MA 02056.

6.    Defendant Susan J. Martin ("Martin") is the Director of
the Massachusetts Department of Correction, Health Services
Division.  Her office is located at 12 Administration Road, P.O.
Box 426, Bridgewater, MA 02324.  Martin is sued in her individual
and official capacity.

7.    Defendant Aaron Lazare ("Lazare"), M.D., is the
Chancellor and Dean of the University of Massachusetts Medical

-2-

School ("UMass"). Upon information and belief, Lazare has authorized a contractual agreement between UMass and the Massachusetts Department of Correction ("DOC") to provide health care to prisoners. His office is located at 55 Lake Avenue North, Worcester, MA 01655. Lazare is sued in his individual and official capacity.

8. Defendant Arthur Brewer ("Brewer"), M.D., is an employee of the University of Massachusetts Medical School and medical director of the UMass Correctional Health Program. His office is located at One Research Drive, Suite 120C, Westborough, MA 01581. Brewer is sued in his individual and official capacity.

9. Defendant Donna Jurdak ("Jurdak"), R.N., is an employee of the University of Massachusetts Medical School and health services administrator at MCI Norfolk. Jurdak is employed under the UMass Correctional Health Program ("UMCHP"). Her office is located at 2 Clark Street, P.O. Box 43, Norfolk, MA 02056. Jurdak is sued in her individual and official capacity.

10. At all relevant times to the events described herein, all the defendants have acted under color of state law.

**HEPATITIS C VIRUS GENERALLY**

11. Hepatitis C virus, or HCV, is a virus that causes liver disease. The virus enters the liver cells, uses the cell's inner genetic machinery to make copies of itself, which then infect more cells. In the vast majority of cases (approximately 85%) the infection becomes chronic and slowly damages the liver. Over time, this liver damage can lead to cirrhosis of the liver, end-stage liver disease, and liver cancer.

-3-

12.   HCV causes approximately ten thousand deaths annually in the United States.

13.   HCV is a serious medical condition.

**THE FACTS**

14.   Plaintiff Kerry M. Castello has been incarcerated since August of 1999 in the State of Massachusetts at the Norfolk State Prison in Norfolk, Massachusetts.

15.   In October of 2001 Castello tested positive for the Hepatitis C virus.

16.   In May of 2002 Lazare negotiated an interdepartmental service contract with Martin.  The purpose of the contract is for UMass to provide comprehensive health care services to the Massachusetts prison population that meets the community standard of care, effective January 1, 2003.  See attached Exhibits A 1-4.

17.   In between the period of August of 2002 and May of 2003 Castello was tested several times for the quantitation of HCV RNA in serum.  The test results revealed abnormal HCV levels that indicate a chronic active infection.  See attached Exhibits B 1-3.

18.   On June 6, 2003, Castello was brought to Lemuel Shattuck Hospital for a liver biopsy.  The biopsy results confirmed chronic inflammatory cell infiltrate in portal areas with a knodell score of 2/22 and a fibrosis score of 0/4.  See attached Exhibit C 1.

19.   In between the period of July and November of 2003 Castello received three separate recommendations from his doctors to be treated with Pegylated Interferon and Ribavirin.  See attached Exhibits D 1-3.

20.   On October 21, 2003, Castello met with Laura Vasconcellos,

-4-

Infectious Disease Coordinator, to fill out a Peg-Intron enrollment form at which time he was informed that it would take three to six months to fill his prescription due to budget constraints. The form was completed and forwarded to Brewer for final authorization. See attached Exhibits E 1-2.

21. More than eight months elapsed and Castello did not receive the medications. Therefore, in mid July of 2004 Castello submitted several sick call slips requesting an appointment with Laura Vasconcellos to review recent lab results and to find out why he had not received the medications. No responses were received.

## EXHAUSTION OF REMEDIES

22. On July 28, 2004, Castello mailed a medical grievance directly to Jurdak in accordance with the UMass Medical Grievance Policy, effective May 3, 2004. No response was received. See attached Exhibits F 1-9.

23. On August 18, 2004, Castello mailed (1) a medical grievance to Brewer with accompanying documents, and (2) an emergency grievance to Superintendent Luis Spencer pursuant to 103 C.M.R. §§ 491.09(3)(a) and 491.11. No response was received as required by section 491.11(3). See attached Exhibits G 1-12.

24. On September 11, 2004, Castello mailed a letter to Commissioner Kathleen Dennehy requesting an investigation because both Jurdak and Superintendent Spencer failed to comply with grievance procedures. No response was received. See attached Exhibits H 1-2.

25. On or about mid September of 2004 Castello mailed (1) a

-5-

medical grievance directly to Martin with accompanying documents, and (2) a letter to Lazare with copies of same. No responses were received. See Exhibits I 1-5.

27. On September 22, 2004, Castello received a letter from Deputy Superintendent Christopher Mitchell regarding his medical grievance and medical needs. The letter is wholly unresponsive to the emergency grievance. Therefore, Castello mailed a letter to Commissioner Dennehy requesting an investigation and assistance to resolve the dispute. No response was received. See attached Exhibits J 1-4.

28. On October 11, 2004, Castello mailed a letter of final notice to Lazare, Brewer, Jurdak, and Martin. No responses were received from Lazare, Brewer or Martin. See attached Exhibits K 1-8.

29. On October 12, 2004, Castello met with Ellen Kurtz, R.N., for a Hepatitis C work-up. Ms. Kurtz took Castello's blood pressure, ordered labs for ALT and AST's, and informed him that decisions to authorize the medications for treatment of HCV were made by Brewer on a case by case basis because of the lack of funds to purchase the medications.

30. On October 15, 2004, Castello met with Laura Vasconcellos regarding his lab results. Ms. Vasconcellos informed Castello that the results indicated continued inflammation of the liver and that she could not give him a definitive answer as to when he would receive the medications. She went further to state that there are restrictions on administering the medications based on budget constraints and that she would contact Brewer to find out where he

-6-

fell on the list of patients waiting to receive treatment.

31.  On October 22, 2004, Castello received a letter from Jurdak stating that he would receive the medications for HCV according to protocol.  See attached Exhibit L 1.

32.  On October 28, 2004, Castello mailed grievances under the UMCHP policy and the DOC grievance mechanism.  Castello received responses from Jurdak and Sergeant K. Kenny.  See attached Exhibits M 1-7.

33.  On November 13, 2004, Castello mailed his appeals under the UMCHP policy and the DOC grievance mechanism.  Castello received a response from Superintendent Spencer.  No response was received from Brewer.  See attached Exhibits N 1-6.

34.  On December 2, 2004, Castello mailed his final appeal to Martin despite the fact that no response was received from Brewer.  Castello received two letters from Martin in response. See attached Exhibits O 1-5.

35.  More than one year has elapsed and the defendants Martin, Lazare, Brewer, and Jurdak have failed to provide Castello with the medications to treat his chronic Hepatitis C infection.

## CAUSES OF ACTION

### COUNT ONE

### 42 U.S.C. § 1983

36.  Plaintiff incorporates herein all other paragraphs of this Complaint.

37.  Defendants' deliberate indifference to the Plaintiff's serious medical condition and needs has caused injury to the

Plaintiff's liver.

38. Defendants' deliberate indifference to the Plaintiff's
serious medical condition and needs has caused the Plaintiff to
suffer from fatigue, aches and pains in his joints and muscles,
and he is being subjected to a substantial risk of serious
permanent injury or death.

39. Defendants' deliberate indifference to the Plaintiff's
serious medical condition and needs deprived the Plaintiff of his
right, guaranteed under the Eighth Amendment to the United States
Constitution and made applicable to the state through the
Fourteenth Amendment, to be free from cruel and unusual punishment.

40. As a direct and proximate result of the defendants'
failure to administer the medications, the Plaintiff will continue
to suffer serious illness and agonizing physical pain in violation
of the Eighth Amendment to the United States Constitution.

41. Plaintiff is entitled to injunctive relief and the
defendants are liable to the Plaintiff pursuant to 42 U.S.C. §
1983.

## COUNT TWO

### 42 U.S.C. § 12132

42. Plaintiff incorporates by reference all other paragraphs
of this Complaint.

43. HCV is a recognized disability under the Americans With
Disabilities Act, 42 U.S.C. § 12132, and the Plaintiff is a
"qualified individual with a disability" who is entitled to the
provisions of services in the form of medical treatment and
education from the defendants who are legally bound to provide

-8-



University of
Massachusetts
**UMASS.** Medical School

Office of the Chancellor and Dean
University of Massachusetts Medical School
55 Lake Avenue North
Worcester, MA 01655
508.856.8100 (office)   508.856.8181 (fax)
aaron.lazare@umassmed.edu (e-mail)

Aaron Lazare, M.D.
Chancellor and Dean
Celia and Isaac Haidak Distinguished Professor
of Medical Education

May 21, 2002

Susan Martin, Director
Department of Correction
Health Services Division
45 Hospital Road, S Building
Medfield, Massachusetts 02052

Dear Ms. Martin:

On behalf of the University of Massachusetts Medical School ("UMMS"), we are extremely pleased to submit this proposal in response to the Department of Correction's Request for Responses, entitled **"Comprehensive Health Services to Massachusetts Prison Population,"** RFR# 03-9004-R21.

Since 1998, the Medical School has greatly enjoyed the close collaboration that has evolved with the Department of Correction in the provision of responsive, high quality mental health services for men and women in its custody. Our proposed medical program builds upon these standards of excellence, as well as the proven track record of the Medical School in the provision of clinical services to hospitalized and incarcerated men and women. With immediate access to a rich array of academic and programmatic resources, the Medical School will also provide unparalleled "added value" to the correctional health program.

As the Commonwealth's public medical school, UMMS has a fundamental commitment to public service, evidenced by a 30 year track record of successful partnerships with various State human services and public safety agencies. In response to the needs of this program, the Medical School has assembled a team of seasoned correctional health administrators and healthcare professionals with exceptional expertise and experience. Significantly, UMMS will bring the correctional health contract back to the Commonwealth to better respond to the needs of the Department of Correction. Together, the Medical School and the Department of Correction will develop a correctional health program of national distinction, unmatched anywhere in its breadth, depth, quality and value.

# COMMONWEALTH OF MASSACHUSETTS
## INTERDEPARTMENTAL SERVICE AGREEMENT FORM

This form is issued and published by the Office of the Comptroller (CTR) pursuant to 815 CMR 6.00 for use by all Commonwealth Departments. Any changes to the official printed language of this form shall be void. This shall not prohibit the addition of non-conflicting terms. By executing this Interdepartmental Service Agreement (ISA), the Buyer and Seller Departments, under the pains and penalties of perjury, make all certifications required by law and certify compliance with the following requirements: that the Seller Department is qualified and shall at all times remain qualified to perform this ISA; that performance shall be timely and meet or exceed ISA standards, including obtaining requisite licenses, permits and resources for performance; that the Buyer and Seller are legislatively authorized to enter into this ISA; that the Buyer and Seller Departments agree to maintain the necessary level of interdepartmental communication, coordination and cooperation to ensure the successful completion of the ISA; that the Buyer certifies that sufficient funds are available for this ISA; that the Seller Department is required to provide reports as specified in the ISA; that the terms of this ISA shall survive its termination for the purpose of resolving any claim, dispute or other action, or for effectuating any negotiated representations and warranties; that the Buyer and Seller agree that all terms governing performance of this ISA are attached to this ISA or incorporated by reference herein, including the Interdepartmental Service Agreement Instructions, all relevant Massachusetts state and federal laws, regulations, Executive Orders, treaties, and any corresponding policies and procedures issued by CTR; and that the Buyer and Seller are responsible for reviewing and complying with the Interdepartmental Service Agreement Instructions and ISA Policy and 815 CMR 6.00 available under Comptroller Policy Memo #306 (or as amended) available at www.state.ma.us/osc/Accounts/marmemos/memos.htm.

| | |
|---|---|
| **MMARS DOCUMENT ID:**  SC – DOC – 9004 3UMMS01 | |
| **BUYER DEPARTMENT: DEPARTMENT OF CORRECTION** | **SELLER DEPARTMENT: University of Massachusetts Medical School** |
| **MMARS 3-POSITION DEPARTMENT CODE: DOC** | **MMARS 3-POSITION DEPARTMENT CODE: N/A (HIGHER ED)** |
| **ISA MANAGER: SUSAN J. MARTIN, DIRECTOR, HEALTH SERVICES** | **ISA MANAGER: THOMAS D. MANNING, VICE CHANCELLOR, OPERATIONS.** |
| **PHONE:** 617-727-8528 | **PHONE:** 508-856-2770 |
| **FAX:** 617-727-8569 | **FAX:** 508-856-8181 |
| **E-MAIL ADDRESS: HEASUSAN@DOC.STATE.MA.US** | **E-MAIL ADDRESS:** |
| **BUSINESS MAILING ADDRESS:** 45 HOSPITAL ROAD, S BUILDING P. O. BOX 317, MEDFIELD, MA  02052-0317 | **BUSINESS MAILING ADDRESS:** 55 LAKE AVENUE NORTH, WORCESTER, MA  01655 |
| **COMPENSATION:** (Check and complete all that apply)<br>____ Single Fiscal Year Financial ISA<br>__X__ Multiple Fiscal Year Financial ISA<br><br>Total Maximum Obligation for Duration of this ISA: $Rate Contract<br><br>Transaction Amount for current fiscal year obligation:<br>$ Rate Contract | **TRANSACTION DOCUMENTATION ATTACHED:** (Check option that applies)<br>____ ASTA Form (when required to establish new Child Account)<br>____ AC Transaction (for total of current fiscal year obligation)<br>__X__ SC Transaction (for total duration of ISA, including outyears. Only allowable if Seller is a Higher Education State Department)<br>____ Other (only upon prior approval of CTR) |
| **BUYER ACCOUNT INFORMATION** (complete as many that apply)<br>Parent Account: _____ N/A _____ , Fund: _____<br>TO:<br>Parent Account: _____ , Fund: _____ | **SELLER ACCOUNT INFORMATION** (complete as many that apply)<br>Child Account: _____ N/A _____ , Fund: _____<br>Child Account: _____ , Fund: _____ |

| |
|---|
| **BRIEF DESCRIPTION OF PERFORMANCE:** (Reference to attachments without a narrative description of performance is insufficient.)<br>Comprehensive Health Services to Massachusetts Prison Population<br>(with 2 options to renew, up to 2 years each option)<br>**RFR REFERENCE NUMBER:** (If Seller responded to a Buyer RFR or "N/A" if not applicable) RFR# 03-9004-R21 |
| **ANTICIPATED ISA EFFECTIVE START DATE:** Performance shall begin on  January 1, 2003, which shall be no earlier than the latest date this ISA is signed by authorized signatories of the Buyer and Seller Departments pursuant to 815 CMR 6.00. |
| **TERMINATION DATE OF THIS ISA:** This ISA shall terminate on  December 31, 2006  unless terminated or amended by mutual written agreement by the parties prior to this date pursuant to 815 CMR 6.00. |

| | |
|---|---|
| **AUTHORIZING SIGNATURE FOR THE BUYER DEPARTMENT:**<br>X: _(signature)_<br>(Signature of Buyer Department's Authorized Signatory)<br>DATE: 12-6-02<br>(Date must be handwritten at time of signature)<br>NAME: MICHAEL T. MALONEY<br>TITLE: COMMISSIONER | **AUTHORIZING SIGNATURE FOR THE SELLER DEPARTMENT:**<br>X: _(signature)_<br>(Signature of Seller Department's Authorized Signatory)<br>DATE: 11-18-02<br>(Date must be handwritten at time of signature)<br>NAME: THOMAS D. MANNING<br>TITLE: VICE CHANCELLOR, OPERATIONS/COMMONWEALTH MEDICINE |

| LOG NO. | REPORT DATE | PROCESSING DATE |
|---|---|---|
| 31127261 | 08/26/02 | 08/08/02 |

**Quest Diagnostics**

415 MASSACHUSETTS A...
CAMBRIDGE, MASS. 021...
TELEPHONE (617) 547-89...

PATIENT NAME

CASTELLO, KERRY
OPD/GI3533
08-63-15  2191514

Quest Director: Salim E. Kabawat, M.D. FINAL

| SPECIMEN DATE | DATE OF BIRTH |
|---|---|
| 08/07/02 | 06/04/1965 |

| SPECIMEN TIME | SEX | AGE |
|---|---|---|
| 02:20PM | M | 37 |

REFERRED BY

LEMUEL SHATTUCK HOSPITAL
170 MORTON STREET
JAMAICA PLAIN, MA 02130
Dr. PRENETA

| Test Name | Out of Range | Within Range | Ref. Range/Units |
|---|---|---|---|
| Hepatitis C viral RNA, quant. PCR with reflex to expanded range | | | |
| HCV RNA, PCR, Quant | >1620000 H | | LESS THAN 1620  copies/mL |
| HCV RNA, PCR, Quant | >600000 H | | LESS THAN 600  IU/mL. |
| ALT | | 33 | 35 OR LESS  IU/L |
| | | | SAMPLE GROSSLY LIPEMIC. |
| HCV RNA, PCR, Quant | 12400000 H | | LESS THAN 16200 copies/mL |
| HCV RNA, PCR, Quant | 4580000 H | | LESS THAN 6000  IU/mL |
| | | | See Quest Nichols (A) |

Quest Nichols Comments
----- ------- --------

(A) HCV RNA, PCR, Quant

The quantitation of Hepatitis C viral RNA in serum or plasma
is based upon the reverse transcription of genomic RNA
followed by PCR amplification in the presence of a
quantitation standard.

This test was performed using a kit that has not been
approved or cleared by the FDA. The analytical performance
characteristics of this test have been determined by Quest
Diagnostics' Nichols Institute.

Comments
--------

CCLink Requisition B16077009214A

Hepatitis C viral RNA, quant. PCR with reflex to expanded range performed at
Quest Diagnostics Incorporated, Nichols Institute, 33608 Ortega Hwy., San
Juan Capistrano, CA 92675

*C, as 8/28/02*

9909 (C) Quest Diagnostics Incorporated. All rights reserved. Published 1998. Revised 10/98.
Quest, Quest Diagnostics, Quest DX and the associated logo are trademarks of Quest Diagnostics Incorporated.

**EXHIBIT**

**B   Page 3**

UMASS MEMORIAL MEDICAL CENTER
ONE BIOTECH PARK, 365 PLANTATION ST, SUITE 200  WORCESTER,MA 01605-23   LABORATOR
L. Michael Snyder, MD Director, Laboratories, UMMMC
RUN ON: 03/20/03   0531
RUN FOR: 03/19/03-03/20/03              TYPE OF REPORT:   NOR - Doctor Repor
                                        REPORT GENERATED AT UNIVERSITY CAMPUS

PATIENT:  CASTILLO,KERRY
                                        MR#:                PHONE:

| LOCATION | AGE | SEX | PHYSICIAN NAME | | ACCOUNT # | STATUS | REG DATE |
|----------|-----|-----|----------------|--|-----------|--------|----------|
| YY-NOR   | 38  | M   | CMS-MCI NORFOLK | | YY000211586 | REG REF | 03/13/03 |
| DOB:     | 06/04/64 | | | | | | |

ADM COMMENTS:  W68067

SPEC #: 0313:MG00014R    13355767  **STATUS:** COMP  **COLL:** 03/13/03-1055  **RECD:** 03/13/03-2208

ORDERED:  HCV RNA QUANT, HEP C SUBTYPR
COMMENTS: HCVPCR Sent to Specialty Laboratory 03/13/03 CARBOF01
          HCVOGEN Sent to Specialty Laboratory 03/13/03 CARBOF01
          03132003
          1034
          R
          Lab Note: PLEASE TEST HEP C GENOTYPE

| Test | Result | Flag | Reference |
|------|--------|------|-----------|
| HEPATITIS C VIR RNA QUNT BDNA | 7240000(a) | H | < 550 IU/ML |

This test or one or more of its components was developed and
its performance characteristics determined by Specialty
Laboratories.
It has not been cleared or approved by the U.S. Food and
Drug Administration. The FDA has determined that such
clearance or approval is not necessary.

> HEPATITIS C VIR SUBTYPR          1b(a)

Subtypes that can be detected include:
1a, 1b, 1c, 1e, 1f, 2a, 2b, 2c, 2d, 2e, 2f, 2h, 2i, 3a, 3b,
3c, 3d, 3e, 3f, 3g, 3h, 4a, 4b, 4c, 4d, 4e, 4f, 5a, 6a, 6b,
7a, 7b, 7c, 7d, 8a, 8b, 8c, 8d, 9a, 9b, 9c, 10a, 11a
This test or one or more of its components was developed and
its performance characteristics determined by Specialty
Laboratories.
It has not been cleared or approved by the U.S. Food and
Drug Administration. The FDA has determined that such
clearance or approval is not necessary.

(a)  Test performed at Specialty Laboratories
     Santa Monica, CA

H = High   L = Low   N = Normal   # = Delta

** END OF REPORT **

July 17, 2003

Kerry M. Costello
M.C.I. Norfolk
Post Office Box 43
Norfolk, MA 02056

Dear Mr. Costello:

I reviewed the materials you sent. While the liver biopsy report does suggest very mild disease, given your relatively young age, I do think that treatment is indicated. And I agree with you that waiting until you have more severe disease doesn't make much sense. As you may know, were you to be treated with 180 micrograms of pegylated interferon alfa-2a once weekly by injection plus ribavirin daily in a dose of 1000 to 1200 mg (depending on your weight) I would anticipate a 40-45% chance of curing you.

Although you consider me an expert witness, my testimony would be severely criticized and probably disallowed because currently I am working for Roche Laboratories, the manufacturers of pegylated interferon alfa-2a. Hence, I would be assumed to be biased, favoring treatment in most instances.

I do wish to help you but I fear that my testimony would not be accepted.

I wish you good luck in this venture.

Sincerely yours,

Raymond S. Koff, M.D.

**Hoffmann-La Roche Inc.**    340 Kingsland Street
Nutley, New Jersey 07110-1199



Lemuel
Shattuck
HOSPITAL

## *Clinic Visit ~ Follow-up Consultation*

Date: 11/19/03   Clinic: GI   Primary Provider: Drewnick

Vital signs: BP 141/99   P 73   RR 20   Temp 97.6   Wt 166   O2-Sat 99

NSR: 39 y.o. ♂ c̄ chronic Hep C, seen by Dr. Drewnick, plse, start tx as written below + follow lab protocol enclosed. RTC prn. _____

MD # Chronic Hep C

39 y.o. ♂ c̄ Chronic Hep C (Genotype 1b/ HCV RNA 7,240,000 in 3/03) seen last month (10/15/03) at which time Liver Bx reviewed:

Knodell HAI = 2/22 with Fibrosis 0/4

At that time Dr. Prenetar recommended treatment with

  PEG Intron 120 mg/week  } x 48 weeks
and Ribavirin 400 mg AM / 600 mg AM

Suggest - PEG Intron/Ribavirin as above if cleared by
- Ophthalmology and
- ✓ CBC/DP weeks 1, 2, 4 and q month
- ✓ Creat, TSH q month
- ✓ HCV RNA after 12 weeks

Page 1 of 1

Consultant's Signature/Print:
  Drewnick

Phone/Beeper: DREWNIAK

RTC: prn

White Copy: Medical Records    Yellow Copy: Requesting Practitioner

OPD.LS.06/01

Addressograph

LS0000531343    LS00086315
CASTELLO, KERRY    06/04/1965
(508) 668-2100    GAS.L M
UMASS CORRECTI

**EXHIBIT**

tabbies

E   Page 2

7/29/03                                    UMCHP

Patient Selection for PegIntron/Rebetron

In order to assure that the central office is aware of all patients who are in need of medication for the treatment of Hepatitis C, providers must complete the attached Hepatitis C work sheet and fax to Paula King at ▮▮▮▮▮

I.      Inmates waiting for treatment will be divided into 4 separate categories:
   1. Treatment naïve
      a. Geno 1 and 4
      b. Geno 2 and 3 (treat with Rebetron)
   2. Dual Diagnosis (HepC/HIV)
      a. Fulminant (go to top of list)
      b. Non-Fulminant
   3. Relapsers after Rebetron Therapy
   4. Treatment Failures of and non-responders to Rebetron Therapy

Priorities can be established within each category if needed.

II.     Inmates will be placed on PegIntron/Ribavirin with the following priorities:
   Any patient admitted on Hep C pharmacological treatment will have that treatment continued.
   All fulminant Dual Diagnosis patients will be placed at the top of the list and will be given priority regardless of date registered.

III.    Selection of patients will be based on groups of ten. The group of 10 patients shall consist of 5 patients from category 1, which is *Treatment Naïve*; 2 or 3 patient from category 2 (*Dual Diagnosis*), 1 patient from category 3 ( *Relapsers after RebetronTherapy*), and 2 patients from category 4 (*Treatment Failures etc.*). Patients will be placed in each category based on the date they were registered on the list: the first on the list in each category shall have been the one with the most time on the waiting list. Biopsy results will also determine placement on list.

IV.     Patient selection will take place once a month under Dr. Brewer's direction and the lists shall be adjusted after selections take place. Each inmate in a group of 10 shall receive treatment before anyone in the next group of 10 is selected. The exact number of patients started each month shall be dictated by the total Hepatitis C pharmaceutical expenditures to that point, in consideration of the final total budget for Hepatitis C expenditure stated by the Department of Correction Health Services Division. In addition to providing precise expenditures for Hepatitis C drug treatment, the State Office for Pharmacy Services will provide expenditure trends and projections for both Hepatitis C treatment and for overall DOC pharmaceutical expenditures each month. Medication orders for PegIntron/Ribavirin will be written only with Dr. Brewer's authorization.

N.B.    I have used the word fulminant to characterize those most critically ill and rapidly advancing dual diagnosis patients described by Dr. McGovern as requiring immediate treatment.

**EXHIBIT A**

**EXHIBIT F  Page 2**

**UMASS MEMORIAL MEDICAL CENTER**
ONE BIOTECH PARK, 365 PLANTATION ST, SUITE 200  WORCESTER,MA 01605-2376     **LABORATORY REPORTS**
L. Michael Snyder, MD  Director, Laboratories, UMMMC
RUN ON: 07/09/04  0530                          TYPE OF REPORT:    NOR - Doctor Report     PAGE 1
RUN FOR: 07/08/04-07/09/04                       REPORT GENERATED AT UNIVERSITY CAMPUS

PATIENT:  CASTELLO,KERRY
                                                 MR#:                    PHONE:

| LOCATION | AGE | SEX | PHYSICIAN NAME | | | |
|----------|-----|-----|----------------|---|---|---|
| YY-NOR | 39 | M | CMS-MCI NORFOLK | ACCOUNT # | STATUS | REG DATE |
| DOB: | 06/04/65 | | | YY000271075 | REG REF | 07/08/04 |

ADM COMMENTS:  W68067

SPEC #: 0708:C00713R     15367420   STATUS: COMP   COLL: 07/08/04-0905   RECD: 07/08/04-2103

ORDERED:  AST, ALT
COMMENTS: 07082004
          0851
          R


| Test | Result | Flag | Reference |
|------|--------|------|-----------|
| > AST | 54 | H | 10-40 U/L |
| > ALT (SGPT) | 60 | H | 10-40 U/L |

7/9/04

H = High    L = Low    N = Normal    # = Delta

** END OF REPORT **

EXHIBIT

C

EXHIBIT

F    Page 4

UMASS MEMORIAL MEDICAL CENTER
ONE BIOTECH PARK, 365 PLANTATION ___    LABORATO ___
L. Michael Snyder, MD Director, Lab ___    ORCESTER,MA 01605-2
RUN ON: 08/29/02  0531
RUN FOR: 08/28/02-08/29/02                    NCR - Doctor Report
                              REPORT GENERATED AT UNIVERSITY CAMPUS

PATIENT:  CASTELLO,KERRY

                                    MR#:                PHONE:

| LOCATION | AGE | SEX | PHYSICIAN NAME | | | |
|---|---|---|---|---|---|---|
| YY-NOR | 37 | M | CMS-MCI NORFOLK | ACCOUNT # | STATUS | REG DATE |
| DOB: | 06/04/65 | | | YY000138896 | REG REF | 08/22/02 |

ADM COMMENTS:  W68067

SPEC #: 0822:MG00011R    12570893   STATUS: COMP   COLL: 08/22/02-1123   RECD: 08/22/02-2320

ORDERED:  HCV RNA QUANT
COMMENTS: HCVPCR Sent to Specialty Laboratory 08/22/02 CARBOF01
          08222002
          1056
          R

| Test | Result | Flag | Reference |
|---|---|---|---|
| HEPATITIS C VIR RNA QUNT BDNA | 6503000(a) | H | < 550 IU/ML |

This test/result or one or more of its components was
developed and its performance characteristics determined by
Specialty Laboratories. It has not been cleared or approved
by the U.S.
Food and Drug Administration. The FDA has determined that
such clearance or approval is not necessary.

(a)  Test performed at Specialty Laboratories
      Santa Monica, CA

ERNEST P. OSEI-TUTU, M.D.

8/29/02

H = High    L = Low    N = Normal    # = Delta

** END OF REPORT **



EXHIBIT
E

EXHIBIT
F  Page 6



Lemuel
Shattuck
H O S P I T A L

## Clinic Visit ~ Follow-up Consultation

Date: 11/9/03    Clinic: GI    Primary Provider: Dreunick

Vital signs: BP 141/99    P 63    RR 20    Temp 97 C    Wt 166    O2-Sat 99

NSV: 39 y.o. ō c chronic Hep C, seen by Dr. Dreunick,
plse, shut tx as written below + follow lab protocol
enclosed. RTC prn. _____

MD # Chronic Hep C
39 y.o. ♂ c Chronic Hep C (Genotype 1b/
HCV RNA 7,240,000 in 3/03) seen last month (10/15/03)
at which time Liver Bx reviewed:
          Knodell HAI = 2/22 with Fibrosis 0/4
At that time Dr. Preneta recommended
treatment with
          PEG Intron    120 mg / week        } x 48 weeks
    and   Ribavirin    400 mg AM/ 600 mg AM  )

Suggest: - PEG Intron/Ribavirin as above if cleared by
         - Ophthalmology and
         - ✓ CBC/DP weeks 1, 2, 4 and q month
         - ✓ Creat, TSH  q month
         - ✓ HCV RNA after 12 weeks

Page 1 of 1

Consultant's Signature/Print: Dreuniak

Phone/Beeper: DREWNIAK

RTC: prn

White Copy: Medical Records    Yellow Copy: Requesting Practitioner
OPD LS 06/01

Addressograph

LS0000531343        LS00086315
CASTELLO, KERRY        06/04/1965
(508) 668-2100        GAS. L M
UMASS CORRECT!

EXHIBIT

F    Page 8

July 17, 2003

Kerry M. Costello
M.C.I. Norfolk
Post Office Box 43
Norfolk, MA 02056

Dear Mr. Costello:

I reviewed the materials you sent. While the liver biopsy report does suggest very mild disease, given your relatively young age, I do think that treatment is indicated. And I agree with you that waiting until you have more severe disease doesn't make much sense. As you may know, were you to be treated with 180 microgtams of pegylated interferon alfa-2a once weekly by injection plus ribavirin daily in a dose of 1000 to 1200 mg (depending on your weight) I would anticipate a 40-45% chance of curing you.

Although you consider me an expert witness, my testimony would be severely criticized and probably disallowed because currently I am working for Roche Laboratories, the manufacturers of pegylated interferon alfa-2a. Hence, I would be assumed to be biased, favoring treatment in most instances.

I do wish to help you but I fear that my testimony would not be accepted.

I wish you good luck in this venture.

Sincerely yours,

Raymond S. Koff, M.D.

Kerry M. Castello #W68067
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056

August 17, 2004

Arthur Brewer, MD
Medical Director
UMass Correctional Health Program
University of Massachusetts Medical School
**One Research Drive, Suite 120C**
Westborough, MA 01581-3922

RE: Formal Grievance

Dear Dr. Brewer:

On July 28, 2004, I mailed a formal grievance to the Health Services Administrator Donna Jurdak, as provided by the Revised Medical Grievance Policy and Procedures Manual that went into effect on May 3, 2004. See policy attached as Exhibit "A."

Please be aware that the Health Services Administrator ("HSA") has not responded to my grievance in accordance with the procedures set forth in the new policy (see clinical grievance mechanism at page 3 of 5). As you already know, the HSA was required to submit her response within 10 business days. The HSA's failure to comply with said procedures can only be construed to be a denial rising to the level of a deliberate indifference to my serious medical needs.

I am now forwarding the formal grievance directly to you for response, because you are the <u>Medical Director</u> of the UMass Correctional Health Care Program. Moreover, the Department of Correction and the University of Massachusetts Medical School has provided you with sole authorization to select the inmates for treatment of hepatitis C. See Infection Control Manual attached as Exhibit "B."

Finally, you will find my relief requested in my formal grievance. But I will also reiterate with emphasis so there no misunderstanding: If I do not receive the medication within 60 days (i.e., Pegylated Interferon & Ribavirin), then I will immediately bring forth legal claims against you for being both negligent and deliberately indifferent to my serious medical needs.

Respectfully submitted,

*Kerry M. Castello*

Kerry M. Castello

Enclosures
cc: Superintendent Luis Spencer
LAC File

| TITLE:    Clinical Grievance Mechanism | Page 2 of 5 |
|---|---|

b. Inmates will be encouraged, but not required, to bring clinical concerns to the attention of the HSA/DON/MHD or designee through informal means such as Management Access (Happy Hour) or via the sick slip process. Inmates may file a UMCH Inmate Grievance and Appeal Form at any time.

c. The HSA/DON/MHD or his/her designee will discuss the concern directly with the inmate, when clinically appropriate. The HSA/DON/MHD or designee will respond verbally to the inmate regarding informal grievances within 5 business days (Monday-Friday and not including legal holidays).

d. If the inmate is not satisfied with the response, the inmate will be given instructions on how to file a formal grievance. Information on the process for filing grievances and appeals is included in inmate orientation to the HSU (Health Services Unit) and is also posted in the HSU and Inmate Law Libraries.

2. Formal Grievances:

a. A Formal Grievance must be filed within ten (10) business days of the incident or situation, within ten (10) business days of the inmate becoming aware of the incident or situation, or within 10 business days of the date on which the inmate receives a response to an informal complaint (as described in I.c.), whichever is later. Whenever a grievance is returned to the inmate for improper format, the inmate shall have an additional three business days from the date of receipt to file a grievance in proper format.

b. The time periods referred to for the filing of a grievance or the response to an inmate grievance may be extended if the HSA determines that the initial period is insufficient to make an appropriate decision or if the inmate presents a legitimate reason for requesting an extension. The extension period may be granted for up to ten (10) business days.

The UMCH Inmate Grievance and Appeal Form must be used. All grievances must be legible and contain the following information:

   i.   Facility Name
   ii.  Inmate First & Last Name
   iii. Inmate DOC ID Number
   iv.  Date of Birth
   v.   Date of Grievance(if multiple dates or date unknown, write "multiple or unknown" and explain in Summary of Grievance.
   vi.  Housing Unit
   vii. Summary of Grievance (Facts)
   viii.Remedy Requested
   ix.  Inmate Signature & Date

c. UMCH Grievance and Appeal Forms will be available in the Health Services Unit (HSU) and on the housing units, including the special management units. HSU staff rounding on the special management units may supply UMCH Grievance and Appeal forms to an inmate upon request of the inmate.

| TITLE: | Clinical Grievance Mechanism | Page 4 of 5 |

h. Appeals may be filed during Management Access (Happy Hour), by placing the form in the sick call box, or by using the prison mail system. The appeal must be addressed to the attention of HSA. For inmates in special management units, forms may be handed to rounding HSU staff.

i. The HSA will review the appeal and forward it to the UMCH Medical Director.

j. If the inmate chooses not to file the appeal with the HSA, the inmate may file the appeal directly with the UMCH Medical Director, by sending it to Medical Director
UMass Correctional Health
One Research Drive – Suite 120C
Westborough, MA 01581

4. <u>UMCH Medical Director Review of Appeal</u>

a. When an appeal is received, the UMCH Medical Director or designee, will verify it has gone through the appropriate process, as set forth in this policy.

b. If the appeal has not gone through the appropriate process, the inmate will be referred via letter back to the HSA. The HSA will receive copies of all documents.

c. If the appeal has gone through the appropriate process, the UMCH Medical Director will review the matter and a response will be given within 10 business days.

d. The response will include a copy of the original appeal form and instruction on how to file an appeal with DOC Health Services.

5. <u>Appeals to the Director of the DOC Health Services Division</u>

a. An inmate may appeal the decision of the UMCH Medical Director to the Massachusetts Department of Correction, Health Services Division.
Appeals must be directly forwarded to:
Director
Massachusetts Department of Correction
Health Services Division
12 Administration Rd,
P.O. Box 426
Bridgewater, MA 02324

b. The Department of Correction, Health Services Division will review the appeal. Clinical consultation or peer review will be obtained as necessary in order to make a determination regarding the grievance. The decision of the Department of Correction, Health Services Division is final.

**EXHIBIT**

tabbies

**EXHIBIT**

tabbies

G    Page 7

7/29/03                                    UMCHP

Patient Selection for PegIntron/Rebetron

In order to assure that the central office is aware of all patients who are in need of medication for the treatment of Hepatitis C, providers must complete the attached Hepatitis C work sheet and fax to Paula King at ████████████.

I.      Inmates waiting for treatment will be divided into 4 separate categories:
        1.    Treatment naïve
              a.    Geno 1 and 4
              b.    Geno 2 and 3 (treat with Rebetron)
        2.    Dual Diagnosis (HepC/HIV)
              a.    Fulminant (go to top of list)
              b.    Non-Fulminant
        3.    Relapsers after Rebetron Therapy
        4.    Treatment Failures of and non-responders to Rebetron Therapy

        Priorities can be established within each category if needed.

II.     Inmates will be placed on PegIntron/Ribavirin with the following priorities:
        Any patient admitted on Hep C pharmacological treatment will have that treatment continued.
        All fulminant Dual Diagnosis patients will be placed at the top of the list and will be given priority regardless of date registered.

III.    Selection of patients will be based on groups of ten. The group of 10 patients shall consist of 5 patients from category 1, which is *Treatment Naïve*; 2 or 3 patient from category 2 (*Dual Diagnosis*), 1 patient from category 3 ( *Relapsers after RebetronTherapy*), and 2 patients from category 4 (*Treatment Failures etc.*). Patients will be placed in each category based on the date they were registered on the list: the first on the list in each category shall have been the one with the most time on the waiting list. Biopsy results will also determine placement on list.

IV.     Patient selection will take place once a month under Dr. Brewer's direction and the lists shall be adjusted after selections take place. Each inmate in a group of 10 shall receive treatment before anyone in the next group of 10 is selected. The exact number of patients started each month shall be dictated by the total Hepatitis C pharmaceutical expenditures to that point, in consideration of the final total budget for Hepatitis C expenditure stated by the Department of Correction Health Services Division. In addition to providing precise expenditures for Hepatitis C drug treatment, the State Office for Pharmacy Services will provide expenditure trends and projections for both Hepatitis C treatment and for overall DOC pharmaceutical expenditures each month. Medication orders for PegIntron/Ribavirin will be written only with Dr. Brewer's authorization.

N.B.    I have used the word fulminant to characterize those most critically ill and rapidly advancing dual diagnosis patients described by Dr. McGovern as requiring immediate treatment.

**MAILING CHARGES**

UNIT ___2-1___ DATE ___8/18/04___

INMATE'S NAME ___Kerry M. Castello___

$ ___106___ HAS BEEN CHARGED TO YOUR
ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN      *First*          LETTER ( )
( ) SPECIAL DEL.     *Class*     REGISTERED ( )
( ) RET. RECEIPT REQ.                   PKG. ( )
( ) AIR MAIL                          *INSURED ( )
                                    CERTIFIED ( )

SIGNED _____
                    MAIL OFFICER

To: Arthur Brewer MD

C9089C7

ATTACHMENT "A"

DEPARTMENT OF CORRECTION
INMATE GRIEVANCE FORM
FORWARD TO THE INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

SECTION "A"

NAME: Kerry M. Castello        INSTITUTION: Norfolk

NUMBER: W68067        HOUSING UNIT: 2-1        DATE OF INCIDENT: 8/17/04

COMPLAINT: See cover letter incorported herewith.

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED: Enforcement of Revised Medical Grievance
Procedures and inquiry on failure to provide
prescribed medication. See cover letter incorporated.

INMATE SIGNATURE: _Kerry M. Castello_        DATE: 8/17/04

STAFF RECIPIENT: _____        DATE: _____

DATE RECEIVED: _____

SECTION "B"

ASSIGNED GRIEVANCE NUMBER: _____

DECISION RENDERED: _____ APPROVED
_____ DENIED

SUMMARY OF FINDINGS:

IGC SIGNATURE: _____        DATE: _____
(DENIED GRIEVANCES MAY BE APPEALED TO THE SUPERINTENDENT WITH 10 DAYS OF IGC'S DECISION.)
SECTION "C"

INMATE GRIEVANCE RECEIPT

INMATE NAME: _____        INSTITUTION: _____

NUMBER: _____        DATE RECEIVED: _____

SIGNATURE (IGC): _____        TITLE: _____

Kerry M. Castello #W68067
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056

September 10, 2004

Kathleen M. Dennehy
Department of Correction
50 Maple Street, Suite 3
Milford, MA 01757

RE: Noncompliance With Grievance Procedures

Dear Commissioner Dennehy:

I am writing this letter to you because the superintendent here at M.C.I. Norfolk has failed to address an ongoing problem of noncompliance with grievance procedures; that is, (1) the Medical Grievance Policy effective May 3, 2004, and (2) the Emergency Grievance Mechanism pursuant to 103 C.M.R., §§ 491.09(3)(A) and 491.11.

Please be aware that on July 26, 2004 I filed a grievance with the Health Services Administrator ("HSA") because I have not received prescribed medications for the treatment of my hepatitis C infection. More than ten days elapsed and no response was received.

Based on the aforesaid, I determined it was necessary to file an emergency grievance pursuant to 103 C.M.R., §§ 491.09(3)(A) and 491.11. It is unfortunate, however, that the superintendent did not agree with me. I have not received any response to date.

You will find enclosed true copies of (1) my emergency grievance, (2) the medical grievance, and (3) a subsequent grievance to Medical Director Auther Brewer, M.D. - none of which have been answered. As such, I must respectfully request that you conduct an investigation into this matter. Hepatitis C is a serious medical condition that can be fatal. It is enough to say that some type of response should have been rendered.

Thank you for your attention to this matter.

Respectfully submitted,

*Kerry M. Castello*
Kerry M. Castello

Enclosures
cc: File

Kerry M. Castello W68067
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056

September 17, 2004

Susan J. Martin
Director, Health Services Division
Department of Correction
12 Administration Road
P.O. Box 426
Bridgewater, MA 02324

RE: Formal grievance

Dear Ms. Martin:

On July 28, 2004, I mailed a formal grievance to the Health Services Administrator ("HSA") here at M.C.I. Norfolk. More than ten working days elapsed and no response was received. I have mailed copies the same to both Auther Brewer, M.D., and Commissioner Dennehy. I Have not received any responses to date (See copies enclosed).

Please be aware that the HSA will not respond to any of my letters or sick call slips at this time. I am therefore exhausting both grievance mechanisms. You will find copies of my medical records attached to my first grievance dated July 26, 2004, and I am sure you will agree that hepatitis C is a serious medical condition that can be fatal if untreated. I see no justifiable reason to withhold prescribed medications.

You are hereby notified of my intentions to bring forth legal claims based on the failure to administer prescribed medications. If I do not receive the medications within 30 days of receipt of this letter, then I will have no other alternative but to file suit naming you as one of the party defendants in the action. I hope you will chose to resolve this dispute by simply ordering the medical staff to provide me with the medication recommended by my doctors.

Thank you for your attention to this matter.

Respectfully submitted,

Kerry M. Castello

cc: File

Kerry M. Castello
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056

September 21, 2004

Aaron Lazare, M.D., Chancellor & Dean
University of Massachusetts Medical School
55 Lake Avenue North
Worcester, MA 01655

RE: Deliberate Indifference To Serious Medical Needs

Dear Mr. Lazare:

I am writing this letter to inform you that employees of the University of Massachusetts Medical School are being deliberately indifferent to my serious medical needs. You will find enclosed true copies of my medical grievances that were mailed to said employees and prison officials.

Please review the first medical grievance dated July 26, 2004, which is addressed to the Health Services Administrator ("HSA") here at M.C.I. Norfolk. The HSA has failed to respond to my grievance and she will not process or answer any of my medical slips. You will find attached to the grievance several of my medical records indicating abnormal viral load levels as well as high ALT and AST levels. You may also note that I have received several recommendations from my doctors to receive Pegylated Interferon and Ribavirin for treatment of my Hepatitis C infection. It is unfortunate, however, that the HSA will not facilitate the order of my medication.

Furthermore, I must request that you review the second grievance submitted to Doctor Auther Brewer on August 17, 2004. I provided Doctor Brewer with copies of the same, because he has sole authorization to write medication orders. I have not received any response from Doctor Brewer. It is now evident that these employees are being deliberately indifferent to my serious medical needs. I am sure you will agree that Hepatitis C is serious medical condition that can be fatal if not treated accordingly.

Based on the foregoing, I am requesting that you order your employees to immediately provide me with the medication recommended by my doctors. If I do not hear from you within ten business days, then I will assume that you have no intention of assisting me to resolve this dispute. As such, I will have no other alternative but to bring forth legal claims in federal court.

**EXHIBIT**

I    Page 5



**MAILING CHARGES**

UNIT _2-1_    DATE _9/21/04_

INMATE'S NAME _Kerry Castello_

$_3 59_ HAS BEEN CHARGED TO YOUR
ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN            LETTER ✓
( ) SPECIAL DEL.      REGISTERED ( )
( ) RET. RECEIPT REQ.          PKG. ( )
( ) AIR MAIL                *INSURED ( )
                        CERTIFIED ✓

SIGNED _____
            MAIL OFFICER

TO: Aaron Lazare, M.D., Ch

Kerry M. Castello
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056

September 23. 2004

Kathleen M. Dennehy
Department of Correction
50 Maple Street, Suite 3
Milford, MA 01757

RE: Exhaustion Of Grievance Procedure

Dear Ms. Dennehy:

I am writing to you again in follow-up to my letter dated
September 10, 2004 (See attached Exhibit A). I have just
received a response to my emergency grievance dated August 17,
2004, which was mailed directly to the superintendent pursuant
to 103 C.M.R., §§ 491.09(3)(A) and 491.11. What troubles me the
most is that the superintendent did not repsond accordingly.
The response was designated to Deputy Mitchell, and it is simply
a letter suggesting that I file another medical grievance (See
attached Exhibit B). It does not address the emergency
grievance procedure with regard to an appeal, etc. In fact, the
deputy has ignored the grievance procedure as well as all of the
copies of grievances that I provided to the superintendent for
his review.

I now feel it is necessary to file this response as a final
exhaustion. First, I mailed the medical grievance to the Health
Services Administrator ("HSA") on July 28, 2004. The HSA was
required to submit her response within ten days but failed to do
so (See mailing charge slip attached as Exhibit C).

Secondly, I filed an emergency grievance with the
superintendent, supra, including copies for his review. I also
mailed a separate grievance to Doctor Auther Brewer with copies
the same (See mailing charge slip attached as Exhibit D). Both
the superintendent and Doctor Brewer have failed to properly
respond in accordance with the grievance policies. It appears
that these mechanisms are not available to prisoners here at
M.C.I. Norfolk.

In conclusion, it is evident that the grievance mechanisms
are not available to me. I am therefore respectfully requesting
that your office investigate this matter and file a response in
due course. I have exhausted every possible avenue. I now have
no other alternative but to file suit in federal court against
the health care provider. If you can offer any assistance to
resolve this dispute, I would be very thankful.



7004 0750 0002 2475 2481

**U.S. Postal Service**

**CERTIFIED MAIL** RECEIPT

(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

*OFFICIAL USE*

| Postage | $ | 60 |
|---|---|---|
| Certified Fee | | 230 |
| Return Reciept Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 2.90 |

SEP 24 2004 Postmark Here

Sent To
Commissioner Kathleen Dennehy
Street, Apt. No.;
or PO Box No. 50 maple ST. Suite 3
City, State, ZIP+4
milford MA 01757

PS Form 3800, June 2002            See Reverse for Instructions

---

**MAILING CHARGES**

UNIT  2-1        DATE  9/24/04

INMATE'S NAME   Kerry M. Castello

$  2⁹⁰  HAS BEEN CHARGED TO YOUR
ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN          LETTER (✓)
( ) SPECIAL DEL.      REGISTERED ( )
( ) RET. RECEIPT REQ.        PKG. ( )
( ) AIR MAIL            *INSURED ( )
                     CERTIFIED (✓)

# M 0907 808

TO: Kathleen Dennehy

SIGNED _____

MAIL OFFICER



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | 37 |
| Certified Fee | | 230 |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 237 |

Postmark Here    OCT 12 2004

Sent To *Aaron Lazare MD*
Street, Apt. No.; or PO Box No. *55 Lake Avenue North*
City, State, ZIP+4 *Worcester MA 01655*

PS Form 3800, June 2002    See Reverse for Instructions

7004 0750 0002 2475 2047

---

**MAILING CHARGES**

UNIT  2-1    DATE  10/12/2004

INMATE'S NAME  Kerry M. Castello

$  280  HAS BEEN CHARGED  TO YOUR
ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN            LETTER (✓)
( ) SPECIAL DEL.        REGISTERED ( )
( ) RET. RECEIPT REQ.        PKG. ( )
( ) AIR MAIL              *INSURED ( )
                          CERTIFIED (✓)

SIGNED _____10/12/4_____
              MAIL OFFICER

TO: Aaron Lazare, M.D.

**EXHIBIT**

K    Page 4

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 37 |
| Certified Fee | 230 |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 237 |

Sent To: Arthur Brewer MD
Street, Apt. No.; or PO Box No. One Research Dr Suite 100
City, State, ZIP+4 Westborough MA 01581-3922

PS Form 3800, June 2002        See Reverse for Instructions

7004 0750 0000 2475 2023

---

MAILING CHARGES

UNIT  2-1        DATE  10/12/2004

INMATE'S NAME  Kerry M. Castello

$  230  HAS BEEN CHARGED TO YOUR ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN              LETTER (✓)
( ) SPECIAL DEL.        REGISTERED ( )
( ) RET. RECEIPT REQ.        PKG. ( )
( ) AIR MAIL              *INSURED ( )
                    CERTIFIED (✓)

SIGNED _____ 10/18
        MAIL OFFICER

TO: Arthur Brewer, M.D.

**EXHIBIT**

K   Page 6

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ 37 |
| Certified Fee | 230 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 237 |

Postmark Here

Sent To  DONNA JURDAK  H.S.A.
Street, Apt. No.; or PO Box No.  PO BOX 43
City, State, ZIP+4  Norfolk MA 02056

7004 0750 0002 2475 2030

PS Form 3800, June 2002                 See Reverse for Instructions

---

**MAILING CHARGES**

UNIT  2-1        DATE  10/12/2004

INMATE'S NAME  Kerry M. Castello

$ 2 30 HAS BEEN CHARGED TO YOUR
ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN              LETTER (✓)
( ) SPECIAL DEL.            REGISTERED ( )
( ) RET. RECEIPT REQ.            PKG. ( )
( ) AIR MAIL                *INSURED ( )
                            CERTIFIED (✓)

TO: Donna Jurdak, HSA

SIGNED _____ 10/13/4
        MAIL OFFICER

**EXHIBIT**

K   Page 8



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ 37 |
| Certified Fee | 230 |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 237 |

Sent To SUSAN J. MARTIN
Street, Apt. No.; or PO Box No. PO Box 426
City, State, ZIP+4 Bridgewater MA 02324

PS Form 3800, June 2002          See Reverse for Instructions

7004 0750 0002 2475 2054

---

**MAILING CHARGES**

UNIT 2-1     DATE 10/12/2004

INMATE'S NAME Kerry M. Castello

$ 230 HAS BEEN CHARGED TO YOUR
ACCOUNT FOR THE MAILING OF A:

( ) AIR FOREIGN              LETTER (✓)
( ) SPECIAL DEL.        REGISTERED ( )
( ) RET. RECEIPT REQ.        PKG. ( )
( ) AIR MAIL              *INSURED ( )
                          CERTIFIED (✓)

SIGNED _____ 10/12/4
          MAIL OFFICER

TO: Susan J. Martin, DOC,/H

UMASS CORRECTIONAL HEALTH

a Commonwealth Medicine Program

## Inmate Grievance and Appeal Form

Facility: M.C.I. Norfolk                     Grievance ☒   Date: 10/26/04

Inmate First Name: Kerry          ID#: W68067   Appeal   ☐   Date:

Inmate Last Name: Castello     Date of Birth: 3/4/65   Housing Unit: 2-1

Dear Ms. Jurdak:

This grievance is in response to your letter dated October 19, 2004. You have failed to recognize that I have received three separate recommendations from my doctors to be treated with Peylated Interferon and Ribavirin. As previously stated, you are acting with deliberate indifference to my serious medical needs when you intentionally interfere with treatment once prescribed. Estelle v. Gamble 429 U.S. 97, 105 (1976); see also Johnson v. Write, 234 F.Supp.2d 352 (S.D.N.Y.2002). As a result, you are subjecting me to cruel and unusaul punishment in violation of the Eighth Amendment to the United Stated Constitution.

Additionally, you have now confirmed that I am being denied the medications based on "protocol." Please be aware that excluding me from receipt of services in the form of medical treatment, follow-up testing ... (continued on attachment "A")

**Remedy Requested (Attach Additional Sheets As Necessary)**

1. Provide me with the medications recommended by my doctors (i.e., Pegylated Interferon and Ribavirin) within ten days.
2. Provide me with follow-up testing and education (i.e., affects of medications/disease updates, etc.) upon commencement of treatment.
3. I am now demanding damages in the amount of $30,000.00 based on your deliberate indifference to my serious medical condition and needs.

Inmate Signature: *Kerry M. Castello*     Date: *October 26, 2004*

Completed forms may be filed with the HSA/DON/MHD or placing the form in the Sick Call Box. For inmates in special management units forms may be handed to rounding HSU staff.

An inmate may appeal the decision of the HSA/DON/MHD to the UMCH Medical Director.

An appeal must be filed within ten (10) working days from the receipt of the decision by the HSA. Appeals should be filed with the HSA, or inmate in special management units, forms may be handed to rounding HSU staff.

An inmate may file the appeal directly with the UMCH Medical Director by mailing it to:
Medical Director
UMass Correctional Health
One Research Drive - Suite 200C
Westborough, MA 01581

**Health Services Unit Use ONLY**

| Date Received: | | Staff Recipient: | | Routed To: | |
|---|---|---|---|---|---|
| | | | | | |

EXHIBIT

M    Page 3

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.®

O F F I C I A L   U S E

| | | |
|---|---|---|
| Postage | $ | 37 |
| Certified Fee | | 2 30 |
| Return Reciept Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 2 67 |

Postmark Here

MAR 28 2004

Sent To   DONNA JURDAK ASA
Street, Apt. No.; or PO Box No.   PO BOX 43
City, State, ZIP+4   NORFOLK MA 02056

7004 0750 0002 2475 2146

PS Form 3800, June 2002                    See Reverse for Instructions

Attachment "A"

of treatment are being based on budget constraints, length of a prisoner's sentence, and the severity of the disease.  Ms. Jurdak refuses to acknowledge that I already have the recommendations for treatment despite multiple grievances.  Notably, she is acting with deliberate indifference to my serious medical needs by intentionally delaying treatment that has been prescribed.  Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Johnson v. Write, 234 F.Supp.2d 352 (S.D.N.Y.2002).  As a result, I am being subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Moreover, based on Ms. Jurdak's statement and all of the aforementioned, I can only conclude that I am being excluded from receipt of services in the form of medical treatment, follow-up testing, and education because I am a prisoner with an HCV disability.  The policy and/or protocol implemented by officials of UMass and the DOC Health Services Division is in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq.  See, e.g., McNally v. Prison Health Services, 52 F.Supp.2d 147 (D.Me.1999); Roope v. Squadrito, 70 F.Supp.2d 868 (N.D.Ind.1999)(upholding claims alleging discriminatory access to medical care because of prisoner's disability).  You will find my remedies requested in the box provided on the Inmate Grievance Form.

Kerry M. Castello
M.C.I. Norfolk
Norfolk, MA 02056

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Massachusetts Correctional Institution Norfolk*
*2 Clark Street, P.O. Box 43*
*Norfolk, Massachusetts 02056*
*Tel: (508)660-5900*

*www.mass.gov/doc*

Mitt Romney
*Governor*
Kerry Healy
*Lt. Governor*
Edward Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*
James Bender
*Acting Deputy Commissioner*
Luis S. Spencer
*Superintendent*


received 11/9/04 (KC)

November 3, 2004

Inmate Kerry Castello W68067
MCI-Norfolk
Unit 2-1
PO Box 43
Norfolk, MA. 02056

Dear Mr. Castello,

I am denying your grievance #04-280, regarding your request to enforce medical treatment. I regret to inform you that medical decisions related to an inmate's physical condition are not grievable under 103 CMR 491, *Inmate Grievances*. UMASS Medical does have a grievance process that is available to all inmates. I have enclosed a medical grievance form with this letter and would encourage you to file your complaint on this form.

I hope this addresses any concerns you may have regarding this matter.

Sincerely,

Sergeant K. Kenney
Institution Grievance Coordinator

Attachment "A"

I have now been informed that I am being denied the medications based on a protocol ("policy") implemented by you and the Director of the Health Services Division of the Department of Correction. It is my understanding that, according to the policy, determinations of treatment are being based on budget constraints, length of prisoners sentences, and the severity of the disease. I believe the policy is discriminatory, whereas some of the prisoners receive treatment and education while others are being excluded from receipt of the same services. See, e.g., McNally v. Prison Health Services, 52 F.Supp.2d 147 (D.Me.1999);(Roop v. Squadrito, 70 F.Supp.2d 868 (N.D.Ind.1999)(upholding claims alleging discriminatory access to medical care).

Although I cannot grieve on behalf of other prisoners affected by the policy, I am, in fact, one of the prisoner's being excluded from receipt of services because of my HCV disability and the policy aforementioned. Therefore, I have cause to grieve (1) violation of my right under the Eighth Amendment to the United States Constitution, (2) discriminatory access to medical care, and (3) damages based on your deliberate indifference to my serious medical condition and needs.

Kerry M. Castello
Kerry M. Castello
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056


NOTE: For your cnvenience, I have enclosed copies of the following:

     (1) letter from Donna Jurdak dated October 19, 2004;

     (2) medical grievance dated October 26, 2004; and

     (3) response from Donna Jurdak dated November 1, 2004.

Thank you for your attention to this matter.

EXHIBIT
N  Page 4
_____

EXHIBIT
N  Page 4
_____

FORM

**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF CORRECTION**
**INMATE GRIEVANCE APPEAL FORM**

| INMATE'S NAME: Kerry M. Castello | INMATE'S #: W68067 | DATE: 11/9/04 |
|---|---|---|

| INSTITUTION: M.C.I. Norfolk | ASSIGNED GRIEVANCE #: 04-280 |
|---|---|

**INSTRUCTIONS:**
1. Refer to 103 CMR 491, Inmate Grievance Policy.
2. Provide your appeal argument in **Block A**, in a brief and understandable manner.
3. Provide your requested remedy in **Block B**.

**A.  Provide your appeal argument in a brief and understandable manner.**

    The Institutional Grievance Coordinator has misinterpreted the context of the grievance. I will reiterate that the medical contractor's failure to provide me with the medications, based on protocols ("policies") implemented by officials of the DOC/HSD and UCHP, violates my rights under the Eighth Amendment to the United States Constitution and ADA, 42 U.S.C. §§ 12131 et seq. The grievance clearly sets forth an allegation of discriminatory access to medical care with supporting authorities.

    I must now direct you to 103 C.M.R. § 491.08(1), which states in relevant part that "matters concerning access to medical ... care are grievable. You will find attached to this appeal form a true copy of the grievance, including the decision by Sergeant K. Kenny. Please grant me all of the relief requested below.

    Thank you for your attention to this matter.

NOTE: Although damages for cruel and unusual punishment are not grievable under 103 C.M.R. § 491.00 et seq., it is, nevertheless, necessary for me to request the damages to insure the issue is exhausted. Sergeant Kenny did not address the damages - amongst the other things.

**B.  Provide your requested remedy**

REMEDIES REQUESTED: (1) enforce medical grievance mechanism; (2) immediately provide me with medications for treatment of HCV; (3) provide me with follow-up testing and education; (4) I am demanding damages in the amount of $30,000.00.

Inmate's Signature _Kerry M. Castello_    Date: _11/9/04_

Staff Recipient _M. Soderbom_    Date: NOV 16 2004

(Inmate receipts/responses will be generated via the Inmate Management System.)

EXHIBIT
N  Page 6

EXHIBIT
N  Page 6

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Massachusetts Correctional Institution Norfolk*
*2 Clark Street, P.O. Box 43*
*Norfolk, Massachusetts 02056*
*Tel: (508)660-5900*

*www.mass.gov/doc*

Mitt Romney
*Governor*
Kerry Healey
*Lt. Governor*
Edward Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*
James Bender
*Acting Deputy Commissioner*
Luis S. Spencer
*Superintendent*

December 9, 2004

Kerry Castello, W68067
MCI-Norfolk – Unit 2-1
P.O. Box 43
Norfolk, MA 02056

RE:     Grievance Appeal #04-280

Dear Mr. Castello:

I am in receipt of your appeal of the aforementioned grievance. Please be advised that under 103 CMR 491, Inmate Grievances, this issue is not grievable. As indicated in her letter to you dated November 3, 2004, Inmate Grievance Coordinator Kenney advised you that you may file a medical grievance.

Based on the above, this appeal is denied.

Sincerely,

Luis S. Spencer
Superintendent

/MAS

cc:    Inmate Grievance Coordinator

e, e.g., <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97, 105 (1976)
<u>Write</u>, 234 F.Supp.2d 352 (S.D.N.Y.2002).

I have now been informed that I am being denied the
medications based on a protocol ("policy") implemented by you
and the medical director of the UMass Corrcetional Health
Program.  It is my understanding that, according to the policy,
determinations of treatment are being based on budget constraints,
length of prisoners sentences, and the severity of the disease.
I believe the policy is discriminatory, whereas some of the
prisoners recieve treatment and education while others are
being excluded from receipt of the same services.  See, e.g.,
<u>McNally</u> v. <u>Prison Health Services</u>, 52 F.Supp.2d 147 (D.Me.
1999); <u>Roop</u> v. <u>Squadrito</u>, 70 F.Supp.2d 868 (N.D.Ind.1999)(
upholding claims alleging discriminatory access to medical
care).

Although I cannot grieve on behalf of other prisoners
affected by the policy, I am, in fact, one of the prisoner's
being excluded from receipt of services because of my HCV
disability and the policy aforementioned.  Therefore, I have
cause to grieve (1) violation of my right under the Eighth
Amemndment to the United States Constitution, (2) discriminatory
access to medical care, and (3) damages based on your deliberate
indifference to my serious medical condition and needs.

Kerry M. Castello
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 02056

EXHIBIT

0   Page 4

EXHIBIT

0   Page 4

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Health Services Division*
*P.O. Box 426*
*Bridgewater, MA 02324*
*Phone: (508) 279-8612*
*Fax: (508) 279-8654*
*www.mass.gov/doc*

Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James Bender
*Acting Deputy Commissioner*

December 13, 2004



received
12/16/04  (KC)

Kerry Castello, W68067
MCI Norfolk
Norfolk, MA

Dear Mr. Castello:

This is to acknowledge receipt of your November 29, 2004 appeal regarding your grievance
appeal sent to Dr. Brewer at University of Massachusetts Correctional Health Services on
November 13. I am referring your appeal to Dr. Brewer for direct response to you.

You may also refer to my November 26, 2004 letter (copy enclosed) to you in response to several
letters submitted to my office as well as to Commissioner Dennehy regarding the matter of your
request for immediate treatment for Hepatitis C.

Sincerely,

Susan J. Martin
Director

eak

CC:    Arthur Brewer, MD, Program Medical Director, UMCH

PRINTED ON RECYCLED PAPER