UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

KERRY CASTELLO,                          C.A. No. 05-10206-JLT

    Plaintiff,

    v.

SUSAN J. MARTIN, et al.,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUSAN J. MARTIN'S MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF CASE

Plaintiff is a pro se inmate of the Massachusetts Department of Correction. Defendant Susan J. Martin is the Director of Health Services for the Massachusetts Department of Correction. Other defendants are medical clinicians and administrators affiliated with the University of Massachusetts Medical School who are not employees of the Department of Correction and who are not represented by undersigned counsel. Plaintiff seeks damages and injunctive relief under 42 U.S.C. §1983 for the alleged failure of defendants to provide him with medication for the treatment of Hepatitis C.

### STATEMENT OF UNDISPUTED FACTS

As her statement of undisputed facts, defendant Martin incorporates by reference her attached affidavit.

Case 1:05-cv-10206-JLT     Document 30     Filed 05/06/2005     Page 2 of 7

2

**ARGUMENT**

I. **DEFENDANT MARTIN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE SHE DOES NOT CONTROL THE DELIVERY OF MEDICAL SERVICES TO PLAINTIFF AND HAS NOT BEEN DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.**

In order to establish an actionable medical claim under the Eighth Amendment, a prisoner must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2nd 255, 259 (1st Cir. 1985)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). These "acts or omissions" must amount to more than negligence in the diagnosis or treatment of a medical condition. Estelle v. Gamble, supra at 106; Layne v. Vinzant, 657 F.2nd 468, 474 (1st Cir. 1981) (where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law); Ferranti v. Moran, 618 F.2nd 888, 891 (1st 1980) (a dispute with an exercise of professional [medical] judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation). "Courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of the prisoner's medical treatment." Watson v. Caton, 984 F.2nd, 537, 540 (1st Cir. 1993).

In the instant case, there is no question that plaintiff has been receiving medical treatment for his medical issues, including his Hepatitis-C.  <u>See</u> Complaint with exhibits; Martin affidavit.  Plaintiff has been seen numerous times by medical staff and has received diagnostic procedures and forms of treatment.  Plaintiff's complaint is that he is not receiving a <u>particular</u> medicine to which he believes he is entitled.  However, medical professionals have determined that plaintiff is not in immediate need of this therapy in light of the medical information available to them and pending further diagnostic tests.  This treatment decision does not rise to the level of deliberate indifference, especially with respect to defendant Martin, who is relying upon the judgment of medical staff. Plaintiff has failed to establish that defendant Martin is aware of a serious medical condition or that she has the authority to compel a particular form of treatment.  Therefore, plaintiff has failed to establish that defendant Martin has been deliberately indifferent to a serious medical need.  "In order to be found 'deliberately indifferent,' prison officials must be shown to have been <u>subjectively</u> aware of a condition requiring their intervention." <u>Mahan v. Plymouth County House of Correction</u>, 64 F.3rd 14, 18 (1st Cir. 1995) (emphasis in original).  Defendant Martin, who is not alleged to be a medical doctor, much less a treating clinician or person with medical expertise in the

diagnosis and treatment of Hepatitis C, is entitled to rely on the professional judgment of medical providers. <u>Layne</u>, 657 F.2d at 472; <u>McCracken v. Jones</u>, 562 F.2nd 24 (10th Cir. 1977); <u>Rosen v. Chang</u>, 811 F. Supp. 754, 761 (D.R.I. 1993) (prison administrator was entitled to qualified immunity when he relied upon licensed nurses and doctors "to exercise informed medical judgment and to provide adequate health care" to a prisoner).

Finally, because defendant Martin is not the decisionmaker with respect to plaintiff's condition, plaintiff cannot establish the requisite proximate cause to establish liability. Causation is an essential element of a claim under 42 U.S.C. §1983. <u>Monroe v. Pepe</u>, 365 U.S. 167 (1961); <u>Santiago v. Garcia</u>, 821 F.2d 822 (1st Cir. 1987). Plaintiff does not state a viable claim against any defendant. However, if plaintiff has any claim at all, it can only be against the decisionmakers, clinicians from UMass Medical School, not defendant Martin.

II.  **<u>DEFEDANT MARTIN IS ENTITLED TO QUALIFIED IMMUNITY.</u>**

It is well established that "governmental officials performing discretionary duties generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v.</u>

Fitzgerald, 457 U.S. 800, 818 (1982). In explication, the Supreme Court has stated:

> "[T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right...[b]ut if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights...It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. (citations omitted)

Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).

The scope of qualified immunity "sweeps so broadly that 'all but the plainly incompetent or those who knowingly violate the law' are protected from civil rights suits for money damages." Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995) (citation omitted). Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing the bright

lines." <u>Wilson v. Layne</u>, 141 F.3d 111, 114 (4th Cir. 1998) (citation omitted).

Because legal precedent demonstrates that the law is clearly established in defendant Martin's favor, <u>a fortiori</u> the law is not clearly established in plaintiff's favor, and defendant Martin is thus shielded by qualified immunity. <u>See</u> <u>Clancy v. McCabe</u>, 441 Mass. 311, 313 (2004) (finding that because defendant was not deliberately indifferent as a matter of law, defendant was entitled to qualified immunity).

## CONCLUSION

For the aforementioned reasons, defendant Martin requests that she be awarded summary judgment and that a separate and final judgment enter as to her.

                                      Respectfully submitted,

                                      NANCY ANKERS WHITE
                                      Special Assistant Attorney General

Dated:   May 6, 2005        /s/ Stephen G. Dietrick_____
                                      Stephen G. Dietrick
                                      Deputy General Counsel
                                      Legal Division
                                      Department of Correction
                                      70 Franklin Street, Suite 600
                                      Boston, MA  02110-1300
                                      Tel. (617) 727-3300 Ext. 116
                                      B.B.O. #123980

**CERTIFICATE OF SERVICE**

    I, Stephen G. Dietrick, Deputy General Counsel for the Department of Correction, hereby certify that on this 6th day of May, 2005, I served a copy of the foregoing on plaintiff Kerry Castello, by first class mail, postage prepaid to him at his address:  P.O. Box 43, Norfolk, MA  02056.


Dated:   May 6, 2005               /s/_Stephen G. Dietrick_____
                                   Stephen G. Dietrick
                                   Deputy General Counsel

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

KERRY CASTELLO,                           C.A. No. 05-10206-JLT

    Plaintiff,

    v.

SUSAN J. MARTIN, et al.,

    Defendants.

### AFFIDAVIT OF SUSAN J. MARTIN

I, Susan J. Martin, on oath depose and state as follows:

1. I am the Director of Health Services for the Massachusetts Department of Correction, a position I have held since March, 2002. The position of Director of Health Services neither requires a clinical degree or licensure nor involves the direct provision or supervision of health care to patients.

2. The Department of Correction contracts with a private health services vendor to provide all medical, mental health, and dental services to inmates incarcerated at Department of Correction facilities.

3. Since January 1, 2003, the University of Massachusetts Medical School has contracted with the Department of Correction to provide both medical and mental health services to its inmates.

2

4.  The primary role of the Health Services Division is to develop, administer, and monitor the contract between the Department of Correction and the Health Services vendor. The relationship between the Department of Correction and the Health Services vendor is stated in the contract. In pertinent part, the contract states:

> The Contractor shall be solely responsible for making all decisions with respect to type, timing, and level of services needed by inmates covered by the program, including, without limitation, the determination of whether an inmate is in need of clinic care, hospitalization, admission to a clinic, referral to an outside specialist, or otherwise needs specialized care.

5.  The principle that medical professionals should exercise independent professional judgment is memorialized in the Department of Correction Health Policy governing clinical contract personnel and the role of the Department of Correction Health Services Division, 103 CMR 610.00 et seq. Section 610.01 provides in pertinent part:

> Matters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists, or dentists.

6.  Neither I as Director of Health Services nor any other Department of Correction employee has any direction or control over the health services provider in the manner in which medical professionals exercise independent professional judgment to

3

determine the appropriate medical treatment for an individual inmate.

7. I am familiar with inmate Kerry Castello and his medical condition as it relates to the claims he is making in this lawsuit, particularly his Hepatitis-C.

8. Mr. Castello has written to Department of Correction officials on several occasions concerning his medical condition and has received responses addressing his concerns. See i.e., plaintiff's Complaint, Exhibits G-10, G-11, H-1, I-1, J-1, J-2, K-7, M-4-5, M-7, N-4, N-6, O-1-1, O-4, O-5, and Exhibit A to this affidavit.

9. It is my understanding from clinical staff for the University of Massachusetts Correctional Health Program that Mr. Castello is being monitored, tested, evaluated, and treated as medically appropriate. See Exhibit O-5 to plaintiff's Complaint and Exhibit A to this affidavit. As recently as yesterday, Mr. Castello was seen in the chronic disease clinic where blood work was done or ordered. I have made no decision with respect to Mr. Castello's treatment for Hepatitis C and certainly have not denied him treatment.

10. In sum, I am not aware of any serious medical need of Mr. Castello towards which the Department of Correction or the University of Massachusetts Correctional Health Program has been deliberately indifferent.

05/05/2005 THU 16:52  FAX 508 279 8654 DOC HEALTH SERVICES                    ☒002/002

4

Signed under the pains and penalties of perjury this 5th day of May, 2005.

_Susan J. Martin_
Susan J. Martin

05/04/2005 WED 16:14  FAX 508 279 8654  DOC HEALTH SERVICES → → → DOC LEGAL                                  ☑002/006



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Health Services Division*
P.O. Box 426
Bridgewater, MA 02324
Phone: (508) 279-8612
Fax: (508) 279-8654
www.mass.gov/doc

Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James R. Bender
*Deputy Commissioner*

March 30, 2005

Kerry Castello, W68067
MCI Norfolk
Norfolk, MA

Dear Mr. Castello:

This is to acknowledge receipt of your grievance appeal dated February 9, 2005 and received on February 16, 2005. A review of your grievance appeal has been conducted and a copy of Dr. Brewer's response to you obtained.

Be advised that treatment for Hepatitis C, once it has been determined that treatment is indicated based evaluation and recommendation by gastroenterology (GI) specialists at Lemuel Shattuck Hospital (LSH) is prioritized in order of individual medical status.

As noted in Dr. Brewer's February 2, 2005 letter to you, you have been placed on the waiting list for treatment. An LSH GI specialist reviews the list monthly to determine individual placement and recommend the order of treatment. When your name comes up on the list you will be notified that the next step in the evaluation process is being scheduled.

It does not appear that there has been any deliberate indifference on the part of the contractual medical provider. It appears that the contractual medical provider has offered you appropriate evaluation according to the Hepatitis C protocol and continues to monitor your status in regularly scheduled Chronic Disease (CD) Clinics. It would be most appropriate for you to ask any questions you may have regarding the disease process and your treatment plan at that time. If your medical status should change before your next CD visit you should submit a sick call request for evaluation.

Your appeal is, therefore, denied. Be advised that this decision is final.

Sincerely,

Susan J. Martin, Director

CC:  Kathleen M. Dennehy, Commissioner
     Arthur Brewer, MD, Program Medical Director
     Donna Jurdak, RN, HSA, MCI Norfolk

*Martin Affidavit*
*Exhibit A*

PRINTED ON RECYCLED PAPER