UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10206-JLT

| | |
|---|---|
| KERRY M. CASTELLO, | ) |
|     Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| SUSAN J. MARTIN, in her individual | ) |
| and official capacity as Director of the | ) |
| Department of Correction, Health Services | ) |
| Division; AARON LAZARE, M.D., in | ) |
| his individual and official capacity as | ) |
| Chancellor and Dean of the University of | ) |
| Massachusetts Medical School; ARTHUR | ) |
| BREWER, M.D., in his individual and official | ) |
| capacity as Director of the UMass correctional | ) |
| Health Program; DONNA JURDAK, R.N., | ) |
| in her individual and official capacity as | ) |
| Health Services Administrator at the Massachusetts | ) |
| Correctional Institution Norfolk; | ) |
|     Defendants. | ) |
| | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS'
CROSS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this civil action, the plaintiff, Kerry M. Castello ("Castello"), a pro se prisoner incarcerated within facilities operated by the Massachusetts Department of Correction ("MDOC"), seeks declaratory relief and compensation for purported civil rights violations allegedly committed by the medical defendants, Arthur Brewer, M.D., Donna Jurdak, R.N., and

965264v1

Aaron Lazare, M.D.[1] (the "defendants"). In his Complaint, Mr. Castello asserts that the defendants knowingly, willfully and intentionally denied and delayed medical treatment, violating his Eighth Amendment rights under Federal Statute §1983. Plaintiff also claims that defendants violated the Americans with Disabilities Act. The defendants dispute these assertions and, on the basis of the record, and the Affidavit of Arthur Brewer, incorporated herein by reference pursuant to Mass. R. Civ. P. Rule 10(c), move for summary judgment on the plaintiff's claims.

## PROCEDURAL HISTORY OF THE CASE

1. The pro se plaintiff, Kerry M. Castello ("plaintiff"), is an inmate lawfully incarcerated within the Massachusetts Department of Correction ("MDOC") and currently housed in the prison facility in Norfolk, Massachusetts ("MCI-Norfolk"). (See Exhibit 1 attached, Complaint, ¶5).

2. The medical defendants ("defendants") are Donna Jurdak, R.N., Aaron Lazare, M.D., and Arthur Brewer, M.D. Susan Martin is also named as a defendant in this case and is represented by separate counsel.

3. Plaintiff commenced this action by filing a Complaint on February 1, 2005, in the United States District Court for the District of Massachusetts. (See Exhibit 2 attached, Court Docket). The plaintiff's Complaint alleges that the medical care and treatment provided to him for Hepatitis C violated his civil rights. (Exhibit 1, ¶¶36-40).

4. On May 6 2005, co-defendant, Susan J. Martin, filed a Motion for Summary Judgment against the plaintiff. (Exhibit 2).

---

[1] The defendants were, at all times relevant to the underlying action, employees of UMASS Correctional Health ("UMCH"). UMCH is a program run by the University of Massachusetts Medical School, a private health services vendor which provides medical services, on a contractual basis, to inmates in the custody of the MDOC.

965264v1

5.	On May 12, 2005, the plaintiff filed a Motion for Summary Judgment against the defendants, Arthur Brewer, M.D., Aaron Lazare, M.D., and Donna Jurdak, R.N. (Exhibit 2).

## STATEMENT OF THE FACTS

1.	Defendant Brewer is the Program Director for UMASS Correctional Health ("UMCH"). Dr. Brewer oversees the patient selection process, which determines whether patients receive Hepatitis C, Peg Intron/Rebetron therapy. (Exhibit 8 attached, Affidavit of Arthur Brewer, M.D. ¶¶1-3).

2.	Defendant Lazare is the Chancellor of UMASS Medical School. Dr. Lazare does not treat inmates, and he does not make decisions regarding inmates' treatment for Hepatitis C. (Exhibit 8, ¶4).

3.	Defendant Jurdak is a registered nurse at MCI-Norfolk, employed by UMCH. Ms. Jurdak also does not make decisions regarding Mr. Castello's Hepatitis C drug therapy. (Exhibit 8, ¶5).

4.	On October 26, 2001, Mr. Castello tested positive for Hepatitis C. (Exhibit 1, ¶15; Exhibit 3 attached, progress notes). Upon his diagnosis, the defendants explained the risk factors inherent in this disease, and that the doctors would evaluate his needs according to the UMCH chronic disease protocol. (See Exhibit 3 attached, progress note 10/26/01).

5.	Mr. Castello's October 31, 2001 lab report results indicated that his Hepatitis C was stable, and his ALT and AST levels were within the normal range between 10 and 40 u/L. (See Exhibit 4 attached, lab reports).

6.	From October 2001 through the present, the defendants have regularly tested plaintiff's AST and ALT levels every six (6) months, to assess the progression of Mr. Castello's Hepatitis C. (Exhibit 4).

965264v1

7. Specifically, Mr. Castello's June 21, 2002 lab reports indicated that his ALT and AST levels were normal at 34 and 26, respectively. (Exhibit 4). Another lab report, from August 22, 2002, revealed that Mr. Castello's Hepatitis was still stable, with an ALT and AST level of both 27. (Exhibit 4).

8. While Mr. Castello's Hepatitis C was stable during this timeframe, the defendants still treated the plaintiff's concerns about the disease. On July 31, 2002, Verdene Colman-Smith, a UMASS Correctional Health educator, met with the plaintiff and discussed his Hepatitis. (Exhibit 3). Additionally, Ms. Colman-Smith gave Mr. Castello information on how to assess the disease's progression. (Exhibit 3).

9. Subsequent lab reports, from December 2002 through May 2003, confirmed that Mr. Castello's Hepatitis C was stable, and that his ALT and AST levels were within the normal range. (Exhibit 4).

10. On May 28, 2003, the plaintiff's lab report indicated that his ALT and AST levels were slightly elevated, at 35 and 43, respectively. (Exhibit 4).

11. Consequently, on June 6, 2003, the plaintiff had a liver biopsy, to assess the progression of his Hepatitis C. One indicator relevant to a patient's biopsy is the Knodell HAI score. This score tests the amount of inflammation and scarring in the patient's liver, and indicates the severity of a patient's Hepatitis C. (Exhibit 8, ¶15).

12. On June 6, 2003, Mr. Castello's Knodell HAI score was 2/22, indicating mild inflammation, and 0/4, indicating no evidence of scarring. (See Exhibit 5 attached, outside medical records). Essentially, the biopsy results revealed that the plaintiff's chronic inflammatory cell infiltrate was minimal, and that he showed no signs of fibrosis. (Exhibit 5).

13.     After the biopsy, Mr. Castello, individually, submitted his medical records to Dr. Raymond S. Koff for assessment.  (See Exhibit 6 attached, letter from Raymond Koff).  Dr. Koff is an employee of Roche Laboratories, the manufacturer of pegylated interferon, the drug that Mr. Castello seeks for treating his Hepatitis C.  (Exhibit 6).

14.     In a July 17, 2003 letter, at Mr. Castello's suggestion, Dr. Koff supported the plaintiff's opinion that waiting for his Hepatitis C to reach its severe stages did not make sense, and that Mr. Castello should be treated with the pegylated interferon and ribavirin drugs immediately. (Exhibit 6).  Dr. Koff also recognized that his recommendations would be severely criticized, given his bias as an employee of the drug's manufacturer.  (Exhibit 6).

15.     On October 15, 2003, while Mr. Castello's lab reports continued to indicate that his Hepatitis C was stable, in light of the fact that plaintiff had a biopsy in June, the Lemuel Shattuck Hospital ("LSH") recommended that the plaintiff's HCV RNA levels be observed, and that he should be treated with the combination therapy in the near future. (Exhibit 5).

16.     In response, on October 25, 2003, the defendants placed Mr. Castello on the combination therapy treatment list, according to the UMCH patient selection criteria.  (See Exhibit 7 attached, UMCH patient selection criteria).

17.     On October 28, 2003, UMCH doctor, Ernest Osei-Tutu, who had been treating plaintiff's Hepatitis C, pointed out that Mr. Castello had used alternative means to get listed for Hepatitis C therapy.  (Exhibit 3).  Dr. Osei-Tutu noted that because Mr. Castello's liver enzymes and biopsy results are stable, while numerous other inmates suffered from much more severe and advanced cases of Hepatitis C, those other patients would have priority on the treatment list, according to the established UMCH protocol.  (Exhibit 3).

5

18. While there are many patients with Hepatitis C currently awaiting treatment on the UMCH combination therapy list, due to the Massachusetts Department of Correction's finite resources, combination therapy is offered first to inmates with the greatest medical need. (Exhibit 7; Exhibit 8, ¶20).

19. Treatment decisions regarding Hepatitis C combination therapy are made by Dr. Arthur Brewer and the UMCH Hepatitis C Committee, not by Dr. Lazare or Nurse Jurdak. (Exhibit 8, ¶¶4-5).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To succeed on a summary judgment motion, the moving party "need not negate, that is disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest." Id. at 714. Rather, the moving party need only show that proof of the essential element is unlikely forthcoming. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(citations omitted).

In the instant case, plaintiff's evidence fails to demonstrate that defendants violated his rights. Consequently, plaintiff's claims are unlikely to be supported at trial, and defendants are entitled to summary judgment as a matter of law.

II.  PLAINTIFF'S CLAIM AGAINST DR. AARON LAZARE FAILS BECAUSE HE IS NOT LIABLE UNDER A NEGLIGENCE OR RESPONDEAT SUPERIOR THEORY.

In cases where institutional liability is at issue, there will not always be a responsible individual who is liable as well. Santos v. Kim, 429 Mass. 130, 136 (1999). In situations where distant members of the institutional hierarchy have the formal responsibility for the workings of the system, these individuals are not always liable and do not always have a personal duty to every patient that comes into their institution's care. Id.

In order to prove that members of an institutional hierarchy should be held liable, the plaintiff must establish that the defendant owed a duty personally to the patient. Id. For instance, in Doherty v. Hellman, a chief of medicine of a hospital, simply by the virtue of his position, did not owe a duty to patients treated by the hospital's doctors because his duty was to his employer, not to individuals who were not his patients. Doherty v. Hellman, 406 Mass. 330, 335 (1989).

Similarly, in the instant case, Dr. Aaron Lazare is the Chancellor of the UMASS Medical School. While Dr. Lazare oversees the UMCH treatment program, which provides healthcare to inmates in Massachusetts, he does not owe a duty to Mr. Castello, in his capacity as Chancellor, because his duty is to UMASS Medical School, his employer, and not to an inmate he never treated. To hold otherwise would make a distant member of the UMCH hierarchy responsible for a patient to whom he never owed a duty.

III.  PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CLAIM FAILS BECAUSE DEFENDANTS DID NOT EXCLUDE MR. CASTELLO FROM THE COMBINATION TREATMENT LIST.

In order to state a claim under Title II of the Americans with Disabilities Act ("ADA"), plaintiff must establish that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in a public entity's services, programs, or activities or otherwise discriminated

against; and (3) such exclusion or discrimination was by reason of his disability. 42 U.S.C. §12132; Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998)(holding that Title II of the ADA applies in the prison context); Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable modifications, … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity." 42 U.S.C. 12131(2).

In the instant case, the defendants do not dispute that Mr. Castello suffers from a serious medical disease, Hepatitis C. However, plaintiff is unlikely to prove the two additional ADA requirements. The second ADA element requires that plaintiff prove that defendants *excluded* plaintiff from the combination therapy list. Patient selection criteria is based on biopsy results. (Exhibit 7). Patient selection protocol also states that once a patient is registered on the treatment list, eligibility for the drugs is either based on the inmate's time on the waiting list, or the inmate's immediate need for treatment, relative to the other inmates on the list. (Exhibit 7).

In the instant case, when Mr. Castello tested positive for Hepatitis C, on October 26, 2001, his lab reports indicated that his disease was stable. (Exhibit 3). For this reason, Mr. Castello did not receive a biopsy until June 6, 2003. (Exhibit 5). When the LSH reviewed the biopsy and recommended that he be treated with combination therapy, on October 15, 2003, the defendants immediately *included* the plaintiff on the antiviral therapy list, on October 25, 2003. (Exhibit 5; Exhibit 8, ¶18). Based on these medical records, Mr. Castello is unlikely to prove the second element required to prove an ADA claim because the plaintiff was *included* on the treatment list based the patient selection criteria.

While Mr. Castello is unlikely to prove the second required ADA element at trial, he is also unlikely to demonstrate that he was excluded from the combination treatment *because of discrimination*. The number of inmates selected for Hepatitis C therapy is based on finite resources and the final total budget for Hepatitis C expenditure stated by the MDOC's Health Services Division. (Exhibit 7; Exhibit 8, ¶20). For this reason, the inmates with the greatest need – those with the most advanced stage of the disease - are treated first with the antiviral drugs. (Exhibit 8, ¶¶20-22). While Mr. Castello has not yet received the drugs, defendants' decision is not based on discrimination, but rather based on the fact that other inmates have a greater need for the drugs. (Exhibit 8, ¶21). Given the medical records and the patient selection protocol, plaintiff is unlikely to prove at trial that he was discriminated against based on his Hepatitis C.

IV.  **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF'S EIGHTH AMENDMENT CLAIM FAILS TO MEET THE DELIBERATE INDIFFERENCE STANDARD.**

Plaintiff is unlikely to prove the required elements of an Eighth Amendment deliberate indifference claim at trial. Mr. Castello's Complaint alleges that defendants were deliberately indifferent to his serious medical need, when they refused to immediately provide him with the Hepatitis C combination therapy. This claim fails as a matter of law because plaintiff cannot demonstrate that his medical needs went unmet or were deliberately ignored.

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). In a fairly recent pronouncement, the United States Supreme Court reaffirmed Estelle, expressly holding that

"a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As illustrated by both the holding in Farmer as well as the principal case law, in the context of §1983 claims for infliction of cruel and unusual punishment, the federal courts have applied the standard enunciated in Estelle strictly and have defined "deliberate indifference" narrowly. See e.g., Ferranti v. Moran, 618 F.2d 888 (1st Cir. 1980); Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1980).

As set forth above, if a plaintiff satisfies the first prong of the Estelle standard by showing his "serious medical need," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment. To establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991).

A.   **Plaintiff's Deliberate Indifference Claim Fails Because Mr. Castello Cannot Prove That Defendants Knew of and Disregarded the Excessive Risk to Plaintiff's Health.**

Defendants acknowledge that plaintiff has a serious medical disease, Hepatitis C. However, the evidence in this case does not meet the extremely high burden of establishing deliberate indifference to those needs. To prove deliberate indifference to a serious medical need, plaintiff must demonstrate that the defendants disregarded an excessive risk to his health or safety. Farmer, 511 U.S. at 837. Mainly, plaintiff must demonstrate that the specific acts or omissions relative to a prisoner's medical treatment constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Estelle v. Gamble,

429 U.S. at 106. The deliberate indifference standard is not met unless "defendant has a culpable state of mind and intended wantonly to inflict pain." DesRosiers v. Moran, 949 F.2d at 19. Because plaintiff fails to meet this burden, summary judgment is appropriate.

1. Plaintiff Is Unlikely to Prove at Trial That the Defendants Deliberately Denied Him Treatment for His Hepatitis C in Order to Wantonly Inflict Pain.

Plaintiff asserts that defendants refused to treat his Hepatitis C symptoms, knowingly causing him pain and suffering. (Exhibit 1, ¶1). In order to establish this allegation, the plaintiff must prove that the defendant intended wantonly to inflict pain. DesRosiers v. Moran, 949 F.2d at 19. Placement on the antiviral drug treatment list is based on biopsy results. (Exhibit 7). When a patient's lab results indicate that their Hepatitis C is stable, they do not need a biopsy. (Exhibit 8).

Here, plaintiff presents no evidence to indicate that the defendants were intentionally indifferent to treating his Hepatitis C. To the contrary, plaintiff's medical records demonstrate that the defendants followed the UMCH established protocol and placed him on the treatment list when the biopsy indicated it was appropriate to do so. Specifically, plaintiff was diagnosed with Hepatitis C on October 26. 2001. (Exhibit 3). Because the plaintiff's ALT and AST levels were stable and within the normal range until May 2003, he was not in need of a biopsy. (Exhibit 3, Exhibit 5). When the plaintiff's AST level was abnormal on May 28, 2003, the defendants did not ignore the lab result, but instead ordered a liver biopsy on June 6, 2003. (Exhibit 5). Based on these biopsy results, on October 15, 2003, the LSH reviewed Mr. Castello's case and recommended that he receive the combination therapy treatment. (Exhibit 5). Upon hearing this suggestion, the defendants did not callously ignore the hospital's recommendation, but, instead, immediately placed the plaintiff on the treatment list on October 25, 2003. (Exhibit 8, ¶18). Based on these records, plaintiff is unlikely to prove at trial that the defendants' treatment of

Mr. Castello's Hepatitis C was outside the established standards or that the defendants callously denied the plaintiff therapy in order to wantonly inflict pain.

    2.    <u>Plaintiff's Deliberate Indifference Claim Also Fails Because Castello Cannot Prove That Defendants Had the Mental State Required to Prove Deliberate Indifference</u>.

Defendants did not have the required awareness or intent to satisfy the deliberate indifference standard. Deliberate indifference turns on the defendants' state of mind. <u>Helling v. McKinney</u>, 509 U.S. 153, 173 (1976). To establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind. <u>DesRosiers v. Moran</u>, 949 F.2d at 19.

In the instant case, plaintiff presents no evidence to contradict the liver biopsy and lab reports, which indicated that Mr. Castello's Hepatitis C was stable. (Exhibit 5). Mr. Castello asserts that the defendants are deliberately indifferent to his medical needs because he has not yet received the combination drugs. However, the defendants' decision to not treat Mr. Castello with the medication yet is based on the patient selection protocol. (Exhibit 7). Specifically, there are other inmates on the list with a more serious version of Hepatitis C, and, thus, a greater need for the medication. (Exhibit 7; Exhibit 8, ¶¶20-22). The plaintiff provides no evidence to indicate that the defendants should have known that his Hepatitis C had advanced to an acute stage, or that the defendants should have placed his needs above the inmates with advanced Hepatitis C. Without such contradictory information, the plaintiff fails to establish that the defendants were aware of Mr. Castello's immediate need for drug therapy.

    3.    <u>Conflicting Medical Opinions Are Not Evidence of Cruel and Unusual Punishment Under The Eighth Amendment</u>.

Plaintiff's reliance on Dr. Koff's recommendation that he immediately receive antiviral therapy drugs are suspect because the doctors' opinions are based on information supplied by Mr. Castello, not UMCH (which has all relevant lab results and biopsies). However, even if the

doctor's suggestions are reliable, plaintiff's Eighth Amendment claim still does not meet the deliberate indifference standard because disagreements in medical treatment are not proof of cruel and inhumane punishment.

> a. <u>Dr. Koff's Opinion Is Unreliable Because It Is Based On Selective Medical Information and Because of His Bias as an Employee of the Drug Manufacturer.</u>

Plaintiff relies on the biased recommendation of Dr. Koff, an employee of Roch Laboratories (the manufacturer of the treatment drug), to prove that the defendants were deliberately indifferent to his serious medical need. Specifically, Dr. Koff's July 17, 2003 letter suggests that Mr. Castello should receive immediate pegylated interferon drug treatment for his Hepatitis C because waiting for the disease to reach its severe stages does not make sense. (Exhibit 6).

While the plaintiff points to Dr. Koff's recommendation as evidence of his need for immediate drug therapy, this opinion is unreliable because it is based on a biased view of selected medical records. (Exhibit 6). Dr. Koff is employed by Roche Laboratories, the drug manufacturer of pegylated interferon. Dr. Koff was consulted on antiviral treatment, only after <u>the plaintiff</u>, not a UMCH doctor, sent him unknown medical records, and only after <u>the plaintiff</u>, not a UMCH doctor, expressed his belief that he should receive immediate treatment. (Exhibit 6). The fact that Dr. Koff himself admits his bias in his letter, and states that his opinion will be severely criticized, is further evidence that this diagnosis is unreliable. (Exhibit 6). Thus, given that Dr. Koff's biased opinion is unreliable, this letter should not be considered evidence that the defendants were deliberately indifferent to plaintiff's serious medical needs.

965264v1

> b. <u>Even If The Court Finds That Dr. Koff's Recommendation Was Reliable, Disagreements Over Treatment Plans Do Not Amount to Cruel and Inhumane Punishment Under The Eighth Amendment</u>.

While outside doctors may not agree with the defendant's Hepatitis C therapy decisions, mere disagreements over treatment do not amount to deliberate indifference. <u>Estelle</u>, 429 U.S. at 107-108. In <u>Estelle</u>, the Supreme Court held that questions of diagnostic techniques or forms of treatment are matters for medical judgment. <u>Estelle</u>, 429 U.S. at 107-108. A medical decision not to order a test, or like measures, does not represent cruel and unusual punishment. <u>Id</u>. Allegations of disagreement over the appropriate course of treatment, such as a dispute over an exercise of professional judgment, falls short of evidencing a Eighth Amendment constitutional violation. <u>Id</u>. at 106.

In the instant case, Dr. Koff appears to disagree with the way defendants' patient selection protocol prioritizes the Hepatitis C patients. Specifically, Dr, Koff believe that Mr. Castello should not have to wait till his Hepatitis C is "severe" to receive the drug therapy. (Exhibit 6). However, the protocol states that drug treatment is given first to those inmates with the greatest need. (Exhibit 7; Exhibit 8, ¶¶18-21). This need is determined by a patient's biopsy results. (Exhibit 7). The medical records establish that plaintiff's Hepatitis C was not advanced, compared with other inmates who had acute Hepatitis C, and, thus, his condition did not warrant immediate antiviral drug treatment. (Exhibit 3; Exhibit 4; and Exhibit 5). Thus, while Dr. Koff is entitled to recommended immediate therapy, unless he alleges that defendants' selection process was improper, that defendants misread Mr. Castello's medical results, or that the plaintiff's Hepatitis C was acute/advanced, his contradictory opinion does not amount to cruel and unusual punishment by the defendants. Without more than a mere disagreement between Dr. Koff and the defendants over the timing of Mr. Castello's antiviral drug therapy, the plaintiff

is unlikely to demonstrate at trial that the defendants were deliberately indifferent to his serious medical needs.

## CONCLUSION

For all of the foregoing reasons, the defendants, *Donna Jurdak, R.N., Aaron Lazare, M.D., and Arthur Brewer, M.D.*, respectfully request that this Honorable Court enter summary judgment, in their favor, on the plaintiff's claims in this matter.

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail on this 30th day of June, 2005.

/s/ James A. Bello
_____
James A. Bello / Lisa R. Wichter

Respectfully Submitted,
The Defendants,
AARON LAZARE, M.D., ARTHUR BREWER, M.D.
& DONNA JURDAK, R.N.
By their attorneys,


**/s/ James A. Bello**
_____
James A. Bello, BBO #633550
Lisa R. Wichter, BBO #661006
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

965264v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10206-JLT

| | |
|---|---|
| KERRY M. CASTELLO,<br>    Plaintiff, | )<br>)<br>) |
| V. | )<br>) |
| SUSAN J. MARTIN, in her individual<br>and official capacity as Director of the<br>Department of Correction, Health Services<br>Division; AARON LAZARE, M.D., in<br>his individual and official capacity as<br>Chancellor and Dean of the University of<br>Massachusetts Medical School; ARTHUR<br>BREWER, M.D., in his individual and official<br>capacity as Director of the UMass correctional<br>Health Program; DONNA JURDAK, R.N.,<br>in her individual and official capacity as<br>Health Services Administrator at the Massachusetts<br>Correctional Institution Norfolk;<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**EXHIBIT LIST**

These exhibits have been copied and mailed to the court, the plaintiff and co-defendant Susan Martin's counsel and are <u>not</u> being filed electronically, per permission of Judge Tauro's docket clerk.

Exhibit 1    Plaintiff's Complaint

Exhibit 2    Court docket

Exhibit 3    CMS/UMASS progress notes

Exhibit 4    UMASS lab reports

Exhibit 5    Outside medical records

Exhibit 6    Letter from Raymond Koff, M.D.

Exhibit 7    UMCH patient selection criteria

1150199v1

Exhibit 8    Affidavit of Arthur Brewer, M.D.

Respectfully Submitted,
The Defendants,
AARON LAZARE, M.D., ARTHUR BREWER, M.D.
& DONNA JURDAK, R.N.
By their attorneys,

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail on this 30th day of June, 2005.

/s/ **James A. Bello**

/s/ James A. Bello

James A. Bello, BBO #633550
Lisa R. Wichter, BBO #661006
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

James A. Bello / Lisa R. Wichter

2

1150199v1