UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KERRY M. CASTELLO,        )
                          )
           Plaintiff,     )    C.A. NO. 05-10206-JLT
     v.                   )
                          )
SUSAN J. MARTIN, et al.,  )
                          )
           Defendants.    )

MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT
BY PLAINTIFF KERRY M. CASTELLO

Plaintiff Kerry M. Castello submits this memorandum of law in support of the motion to alter or amend judgment and in compliance with LR 7.1(B)(1).

A.   Rule 59(e) Applications

Rule 59(e) provides an appropriate route for a party to direct the district court's attention to a manifest error of fact or law and allows the court to correct its own errors. Aybar v. Crispin-Reyes, 118 F.3d 10 (1st Cir. 1997). Thus, a motion under Rule 59(e) is appropriate "where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). If a party seeks review of a grant of summary judgment, as to those motions, a de novo standard applies. See Cockrel v. Shelby County School District, 270 F.3d 1036, 1047 (6th Cir. 2001).

B.   Misapprehended Facts

Plaintiff directs attention to the statement of facts within the Court's Memorandum (see attached Exhibit A). The Court

begins stating that, upon Plaintiff testing positive for Hepatitis C in October of 2001, "Defendants Lazare, Jurdak, and Brewer explained to Plaintiff that the doctors would evaluate his needs according to the UMCH chronic disease protocol. . . ." (Tauro, J. Mem. at p. 3). There is no documentary evidence in the record supporting this statement of fact. Plaintiff was diagnosed by Correctional Medical Services, Inc. UMASS became the contractual health care provider on January 1, 2003 (Pl.'s V. Amen. Compl. at ¶ 16). The Defendant Jurdak did not become an employee of UMASS until November of 2003. Plaintiff directed his correspondence to the defendants in between July and December of 2004 (Pl.'s V. Amen. Compl. at ¶¶ 22-34).

There are additional errors of fact that follow. In paragraph three the Court states: "In response to Plaintiff's submission, Dr. Koff, in a letter dated July 17, 2003, stated that while the liver biopsy report suggested a 'very mild disease,' given Plaintiff's relatively young age, <u>treatment was not indicated</u>." (Tauro, J. Mem. at pp. 3-4). This is a damaging error of fact. Dr. Koff's letter dated July 17, 2003, states in relevant part:

> I reviewed the materials you sent. While the liver biopsy report does suggest very mild disease, given your relatively young age, I do think that <u>treatment is indicated</u>. And I agree with you that waiting until you have more severe disease doesn't make much sense. As you may know, were you to be treated with 180 micrograms of pegylated interferon alfa-2a once weekly by injection plus ribavirin daily in a dose of 1000 to 1200 mg (depending on your weight) I would anticipate a 40-45% chance of curing you.

(Pl.'s V. Amen. Compl. at Ex. D-1).

Next, the Court states: "On October 15, 2003, the Lemuel Shattuck Hospital ("LSH"), noting that Plaintiff had undergone a liver biopsy in June, recommended that Plaintiff's HCV RNA levels be observed, and that he should be treated with combination therapy in the near future." (Tauro, J. Mem. at p. 4). This too is an error of fact. Dr. Ewa Preneta specifically recommended:

> In view of patient's request and attached letter we are suggesting treatment:
> --Pegylated IFN 120 mg per 0.5 wl ...
> --Ribavirin 2 tabs po a.m. and 3 tabs po q a.m.
> Labs to be followed by protocol.
> RA. HCV RNA, ... today.

(Pl.'s V. Amen. Compl. at Ex. D-2).[1] Dr. Drewniak confirmed the recommendation, agreed, and recommended treatment (Pl.'s V. Amen. Compl. at Ex. D-3).[2]

The aforementioned facts upon which the Court relied on to warrant the grant of summary judgment are plainly wrong. It appears the Court misapprehended facts, as well as Plaintiff's position. There is also a procedural issue of law with respect to the joint Cross-Motion for Summary Judgment submitted by the Defendants Lazare, Brewer, and Jurdak. As such, a review under the de novo standard is required.

---

[1] Plaintiff's Verified Amended Complaint should be treated as a functional equivalent of an affidavit insofar that it complies with summary judgment rule. Sheinkoff v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1992).

[2] On October 21, 2003, Plaintiff signed the treatment consent form and the prescription was ordered. (Pl.'s V. Compl. at Ex. E-1).

3

C.  Procedural Errors of Law

The Defendants Lazare, Brewer, and Jurdak submitted their joint Cross-Motion for Summary Judgment fifteen days after the filing deadline. Plaintiff challenged the filing and, in response, the Defendants filed their belated Motion for Extension to File a Cross-Motion for Summary Judgment, Post Deadline (Docket at #71). Plaintiff opposed the motion pointing out the Defendants' failure to show "excusable neglect," Lujan v. National Wildlife Federation, 497 U.S. 871, 873-74 (1990), and, went further, directing the Court to review the considerations found within Poineer Investment Services, Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993) (Docket at #74). The law is well settled on this issue. See Mendez v. Banco Popular De Puerto Rico, 900 F.2d 4, 6-7 (1st Cir. 1990).

In open court, on December 1, 2005, Judge Tauro stated that he had not reached a determination regarding the Defendants' Motion for Extension (Docket at #71). Oddly, the Court has now allowed the Defendants' joint Cross-Motion for Summary Judgment without ruling on the Motion for Extension. This procedural error has foreclosed Plaintiff from response and prejudiced him. For example, upon the Court reaching a determination on the Defendants' Motion for Extension, Plaintiff would have had the opportunity to oppose the Defendants' joint Cross-Motion for Summary Judgment. Particularly, Plaintiff would have raised opposition to the documents inappropriately attached to the Defendants' Memorandum in Opposition to Plaintiff's Motions for Summary Judgment (Docket at #64).

4

Now, after reviewing the Court's Memorandum, it would appear that the Court actually conducted its summary judgment analysis using the documents attached to the Defendants' Memorandum (Tauro, J. Mem. at pp. 4-5). This too is a precedural error of law. "Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131, (1st Cir. 2000)(citing Fed. R. Civ. P. 56(e)). In order for documents to be admissible at the summary judgment stage, "'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" Id. (quoting Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2722 at 382 (3d ed. 1998)). In light of the errors of fact and law noticed herein, Plaintiff's position is that a review de novo is necessary and warranted.

D.  Plaintiff's Position and Errors of facts and Law: Defendant Martin

For the purpose of a summary judgment analysis, Plaintiff's Verified Amended Complaint must be treated as a functional equivalent of an affidavit. Sheinkoff v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1992). Plaintiff directs the Court's attention to Dr. Koff's recommendation for treatment: "While the liver biopsy report does suggest very mild disease, given your relatively young age, I do think that treatment is indicated. . . ." (Pl.'s V. Amen. Compl. at ¶ 19, Ex. D-1). Upon review of Dr. Koff's recommendation, Dr. Ewa Preneta prescribed:

5

```
--Pegylated IFN 120 mg per 0.5 wl ...
--Ribavirin 2 tabs po a.m. and 3 tabs po q a.m.
Labs to be followed by protocol.
RA. HCV RNA, ... today.
```

(Pl.'s V. Amen. Compl. at ¶ 19, Ex. D-2). Thus, it is a proven fact that medical professionals (treating clinicians) have recommended that Plaintiff be treated with specific medications.

A serious medical need, as explained by Court of Appeals for the First Circuit, "is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudrealt v. Manicipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). Based on the record evidence and the recommendations by medical professionals, it is an undisputable fact that Plaintiff has a serious medical need. The questions are: (1) whether the Defendant Martin has been subjectively aware of Plaintiff's serious medical need, and (2) whether she took reasonable measures to abate the risk of harm to Plaintiff's health. See Farmer v. Brennan, 511 U.S. 825 (1994). [3]

Prison officials and prison doctors act with deliberate indifference when they intentionally delay or interfere with treatment once prescribed. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Prison officials and prison doctors cannot "'substitute their judgments for a medical professional's prescription.'" Johnson v. Wright 234 F.Supp.2d 352, 361 (S.D.N.Y. 2002)(quoting Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Compare Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995).

Here in the instant case, the Defendant Martin, who is a licensed registered nurse and director of the health services division, is fully aware that medical specialists from Lemuel Shattuck Hospital have prescribed Plaintiff medications to treat his chronic Hepatitis C infection (Pl.'s V. Amen. Compl. at ¶¶ 25, 28, 32, & Ex.'s I-1, K-7, O-4, O-5; see also R. 56(e) Aff. at ¶ 15). Having proved that the Defendant Martin is aware that Plaintiff has been diagnosed by physicians and treatment has been mandated, there can be no dispute to fact that the Defendant Martin is subjectively aware of plaintiff's serious medical need. See Gaudrealt v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

Plaintiff will now focuss on whether the Defendant Martin intentionally interfered or delayed treatment prescribed to Plaintiff. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). There is no protocol in the record authorizing the medical specialists at Lemuel Shattuck Hospital to delay medications once they have been prescribed. Plaintiff again brings into light the internal policy implemented by the Defendants Martin and Brewer. The policy states in relevant part:

---

[3]/ Plaintiff has effectively raised the issue that the Eighth Amendment guarantees him protection from harm to his future health. Helling v. MicKinney, 509 U.S. 25, 32-33 (1993) (see Pl.'s Mem. in Opp. p. 9)(Docket at #50).

7

> Patient selection will take place once a month under Dr. Brewer's direction and the lists shall be adjusted after selections take place. Each inmate in a group of 10 shall receive treatment before anyone in the next group of 10 is selected. The exact number of patients started each month shall be dictated by the total <u>Hepatitis C pharmaceutical expenditures to that point, in consideration of the final total budget for Hepatitis C expenditure stated by the Department of Correction Health Services Division</u>. In addition to providing precise expenditures for Hepatitis C drug treatment, the State Office for Pharmacy Services will provide expenditure trends and projections for both Hepatitis C treatment and for overall DOC pharmaceutical expenditures each month. Medication orders for PegIntron/Ribavirin will be written only with Dr. Brewer's authorization.

(Pl.'s V. Amen. Compl. at Ex. E-2).

This internal policy is referenced in Plaintiff's Memorandum and Reply Memorandum (see Pl.'s Mem. in Opp. p. 7; see also Pl.'s Rep. Mem. in Opp. at p. 5) (Docket at ##50 & 83). Plaintiff has argued that he should not be denied the medications based on budget constraints, citing as authority <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97, 103 (1976); <u>Gates</u> v. <u>Collier</u>, 501 F.2d 1291, 1320 (5th Cir. 1974); <u>Ancata</u> v. <u>Prison Health Services, Inc.</u>, 769 F.2d 700, 705 (11th Cir. 1985); <u>Harris</u> v. <u>Thigpen</u>, 941 F.2d 1495, 1509 (11th Cir. 1991). It would now appear that the Court has misapprehended Plaintiff's position. Stated in clear language: the internal policy is unconstitutional because it delays treatment once prescribed. The Eighth Amendment protects Plaintiff from the denial of medical care based on budget constraints.

The Defendant Martin knew, or should have known, that the internal policy she approved is unconstitutional because it

delays treatment once presribed. <u>Estelle</u>, supra, at 104 (see Third R. 56(e) Aff. at Tab Five, pp. 5-7). The record evidence proves that the Defendant Martin knew of the violation of law and of the the risk of harm to Plaintiff's present and future health. (Pl.'s V. Amen. Compl. at ¶¶ 22-35; Second R. 56(e) Aff. at ¶¶ 10-13; Third R. 56(e) Aff. at ¶¶ 5-8). The fact that the State conracts out its "prison medical care does not relieve the State of its constitutional duty to provide adequate treatment to those in its custody, and it does not deprive the State's prisoners the means to vindicate their Eighth Amendment rights. <u>West</u> v. <u>Atkins</u>, 487 U.S. 42, 56 (1988). And as it is evidenced in the record of this case, the Defendant Martin is a licensed registered nurse and the director of the health services division having the authority to order Plaintiff's prescription (R. 56(e) Aff. at ¶¶ 1-15; Second R. 56(e) Aff. at ¶¶ 5-13). However, she has refused to so in the face of injury to Plaintiff and the substantial risk to his future health.

Plaintiff has met his burden of a showing that there are genuine issues of material facts to be tried. And based on the errors of fact and law brought to the Court's attention herein, and because the Court may have misapprehended Plaintiff's position, it is necessary for the Court to reopen the case and conduct a review de novo to prevent manifest injustice.

## CONCLUSION

In light of the foregoing, Plaintiff requests that the Court vacate or rescind the order and conduct a review de novo.

Date: February 9, 2006

Respectfully submitted,

*Kerry M. Castello*
Kerry M. Castello, Pro Se
P.O. Box 43
Norfolk, MA 02056

### CERTIFICATE OF SERVICE

I, Kerry M. Castello, hereby certify that a true copy of the above document was served upon each attorney of record for each other party by mail, first class, postage prepaid on this 10th day of February, 2006.

*Kerry M. Castello*
Kerry M. Castello, Pro Se

10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERRY M. CASTELLO,<br><br>    Plaintiff<br><br>  v.<br><br>SUSAN J. MARTIN, in her individual<br>and official capacity as Director of the<br>Department of Correction, Health Services<br>Division; AARON LAZARE, M.D., in his<br>individual and official capacity as Chancellor<br>and Dean of the University of Massachusetts<br>Medical School; ARTHUR BREWER, M.D., in<br>his individual and official capacity as Director<br>of the UMass Correctional Health Program;<br>DONNA JURDAK, R.N., in her individual and<br>official capacity as Health Services Administrator<br>at the Massachusetts Correctional Health<br>Institution Norfolk;<br><br>    Defendants. | Civil Action No. 05-10206-JLT |

MEMORANDUM

February 1, 2006

TAURO, J.

  This is a civil action in which Plaintiff, Kerry M. Castello ("Castello"), a *pro se* prisoner incarcerated within facilities operated by the Massachusetts Department of Correction ("MDOC"), seeks declaratory relief and compensation under 42 U.S.C. § 1983 for civil rights violations allegedly committed by Defendants Susan J. Martin, Arthur Brewer, M.D., Donna

Jurdak, R.N., and Aaron Lazare, M.D. ("Defendants"). Specifically, Plaintiff alleges that Defendants knowingly, willfully, and intentionally denied and delayed medical treatment by failing to provide him with medication for the treatment of Hepatitis C, thereby violating his Eighth Amendment rights.

### Background

**A.   Parties**

Plaintiff Kerry M. Castello is a prisoner who has been incarcerated since August 1999 in the Norfolk State Prison. Defendant Susan J. Martin is the Director of Health Services for the Massachusetts Department of Correction.[1] Defendant Arthur Brewer is the Program Director for the University of Massachusetts Correctional Health ("UMCH").[2] Dr. Brewer oversees the patient selection process, which determines whether patients receive Hepatitis C, Peg/Intron/Rebetron therapy.[3] Defendant Aaron Lazare is the Chancellor of UMASS Medical School.[4] Defendant Donna Jurdak is a registered nurse at MCI-Norfolk, employed by UMCH.[5]

**B.   Statement of the Facts**

---

[1] The position of Director of Health Services does not require a clinical degree or licensure or involve direct supervision of health care to patients. Aff. of Susan J. Martin [#30-2] at 1.

[2] Since January 1, 2003, The University of Massachusetts Medical School has contracted with the Department of Correction to provide both medical and mental health services to its inmates. Aff. of Susan J. Martin [#30-2] at 1.

[3] Defs.' Statement of Undisputed Facts ¶ 12.

[4] Id. at ¶ 3.

[5] Id.

On October 26, 2001, Plaintiff Castello tested positive for Hepatitis C.[6] Upon his diagnosis, Defendants Lazare, Jurdak, and Brewer explained to Plaintiff that the doctors would evaluate his needs according to the UMCH chronic disease protocol. Plaintiff's October 31, 2001 lab reports indicated that his Hepatitis C was stable, and that his liver enzymes were within a normal range. From that point forward, the Defendants have tested Plaintiff every six months to assess his condition, and the progression of his Hepatitis C. Subsequent lab reports indicated that Mr. Castello's enzyme levels were stable, and that they continued to remain within the normal range up until May of 2003. During that period, the medical Defendants continued to address Plaintiff's concerns about his condition, discussing with him the disease and how to monitor its progression.

On May 28, 2003, however, Plaintiff's lab results indicated slightly higher enzyme levels. On June 6, 2003, therefore, Plaintiff underwent a liver biopsy to assess his condition. The results of the biopsy indicated only mild inflammation, and no evidence of scarring. Plaintiff showed no signs of fibrosis and his inflammatory cell infiltrate was minimal.

Plaintiff, thereafter, on his own volition, submitted his medical record to Dr. Raymond S. Koff, an employee of Roche Laboratories ("Roche"). Roche manufactures Pegylated Interferon, the drug which Plaintiff currently seeks to treat his Hepatitis C. In response to Plaintiff's submission, Dr. Koff, in a letter dated July 17, 2003, stated that while the liver biopsy report suggested a "very mild disease," given Plaintiff's relatively young age, treatment was *not*

---

[6]The following undisputed facts are drawn from Pl.'s Amend. Compl., Def. Martin's Mem. of Law in Opp. to Pl.'s Mot. for Summ. J., Defs.' Brewer, Lazare, and Jurdak's Mem. of Law in Opp. to Pl.'s Mots. for Summ. J, Defs. Statement of Undisputed Facts, and the evidentiary materials submitted in support.

3

indicated.[7] Dr. Koff then went on to state that he did agree with Plaintiff's opinion that "waiting until [plaintiff] [has] a more severe disease doesn't make much sense."[8] Dr. Koff thereafter concluded if Plaintiff is treated with Pegylated Interferon and Ribavarin daily, he would have a 40-45% chance of being cured of Hepatitis C.[9] In closing, however, Dr. Koff warned that his recommendations would be highly criticized given his bias as an employee of the manufacturer of the drug that he was recommending.[10]

On October 15, 2003, the Lemuel Shattuck Hospital ("LSH"), noting that Plaintiff had undergone a liver biopsy in June, recommended that Plaintiff's HCV RNA levels be observed, and that he should be treated with combination therapy in the near future. The medical Defendants, in response to this recommendation, placed Plaintiff on the combination therapy treatment list in accordance with the methodology of the UMCH patient selection criteria.[11] Treatment decisions regarding Hepatitis C combination therapy are made by Dr. Arthur Brewer and the UMCH Hepatitis C Committee, not by Dr. Lazare, Nurse Jurdak, or Susan Martin.

On October 28, 2003, Dr. Ernest Osei-Tutu, the UMCH doctor who had been treating Plaintiff, noted vehemently in his progress report that Plaintiff's efforts to circumvent the system in order to get priority treatment were inappropriate.

---

[7]Letter from Dr. Raymond S. Koff to Kerry M. Castello (July 17, 2003), Defs. Mem. [#64] Ex. 6.

[8]Id.

[9]Id.

[10]Id.

[11]Defs.' Mem at ¶ 16 (citing to the UMCH patient selection criteria, Defs.' Mem. [#64] Ex. 7.).

4

[Patient's] disrespect and disdain for the rightful way of doing things was again evident in the manner in which he went about trying to get his Hep[atitis] C treated. [Patient] did not meet our criteria for referred for liver [biopsy]. He had normal liver enzymes. He was able to threaten and intimidate a provider to refer him to his [sic] for [a] liver [biopsy] which showed a fibrosis score of 0/4, a Knodell score of 2/22 and mild chronic inflammatory cell infiltrate. In the normal scheme of things, Mr. Castello should not be getting PEG Inferon [prescription] because we have a lot of inmates [with] [] severe and advanced cases of Hep[atitis] C [] [biopsy] results who deserve [prescriptions].

... Inmate Castello through intimidation deprived a deserving inmate a chance for liver [biopsy] and expedited therapy .... There are a lot of more deserving inmates in terms of the horrifickness [sic] of their liver [biopsy]/liver enzyme results who, in my estimation should have the first crack at [prescriptions]. Some of these inmates have been waiting for months to get treatment. Statewide there are more than 400 Chronic Hep[atitis] C patients and of those who have had their biopsies - only approx[imately] 40-45 patients are being treated for their disease. This has been necessitated by fiscal constraints (budget shortfalls) at the state level.[12]

Plaintiff has moved for summary judgment against Defendants Brewer, Lazare, Jurdak, and Martin, arguing that they were deliberately indifferent to his serious medical needs, thereby depriving him of his Eighth Amendment right to be free from cruel and unusual punishment. Defendant Martin has moved for summary judgment in her favor, and Defendants Lazare, Brewer, and Jurdak have filed a joint cross-motion for summary judgment in their favor.

## Discussion

A.  **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and ... the moving party [has

---

[12]Defs.' Mem [#64] Ex. 3.

demonstrated an] entitle[ment] to a judgment as a matter of law."[13] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[14]

In deciding whether to allow a motion for summary judgment, a court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."[15] A court, however, need not afford any weight to "conclusory allegations, improbable inferences, and unsupported speculation."[16]

**B.      Medical Mistreatment as a Violation of the Eighth Amendment**

To establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must demonstrate "acts or omissions sufficiently harmful to evidence *deliberate indifference* to *serious medical needs*."[17] Deliberate indifference is conduct that offends evolving standards of decency in a civilized society.[18] It therefore has both an objective component –

---

[13] Fed. R. Civ. P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996).

[14] Id. (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995)).

[15] Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

[16] Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

[17] Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985) (emphasis added) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

[18] DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

6

whether there was a sufficiently serious deprivation – and a subjective component – whether the deprivation was brought about in wanton disregard of the inmate's rights.[19] Allegations of mere negligence in the treatment of a medical condition do not constitute deliberate indifference.[20] Disagreement regarding the proper course of treatment does not rise to the level of a constitutional violation.[21] The First Circuit has recognized this principle, noting that "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'"[22] In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended to wantonly inflict pain.[23]

C.     **Defendant Martin's Motion for Summary Judgment**

Defendant Martin argues that she is entitled to summary judgment in her favor for two distinct reasons: first, that she does not control the delivery of medical services to Plaintiff and has not been deliberately indifferent to his serious medical needs, and second, that as a government official performing a discretionary duty, she is entitled to qualified immunity.[24] Because this court finds that Defendant Martin was not aware of any "serious medical needs" to which she was

---

[19]Id. (citing Wilson v. Seiter, 501 U.S. 294 (1991)).

[20]Estelle, 429 U.S. at 106.

[21]Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993).

[22]Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

[23]See Wilson, 501 U.S. at 294.

[24]Def. Martin's Mem. in Supp. of Mot. for Summ. J. at 2.

7

deliberately indifferent, Defendant Martin's Motion for Summary Judgment is ALLOWED.

Irrespective of whether Plaintiff suffers from a "serious medical need," it is clear that Defendant Martin was not "deliberately indifferent" to Plaintiff's condition. The Plaintiff has, and continues to receive, treatment for his Hepatitis C. Plaintiff has been seen regularly by medical staff and has received various forms of treatment. Although Plaintiff is insistent that he should receive a particular type of treatment, medical professionals have determined that, at this time, Plaintiff is in no immediate need for this type of therapy. This treatment decision was based on the Plaintiff's medical records and diagnostic tests performed within a reasonable time range of the decision. As such, it does not rise to the level of deliberate indifference.

Plaintiff, moreover, has failed to establish that Defendant Martin, specifically, was deliberately indifferent to any serious medical need. Martin, who relies upon the judgment of medical staff and is not a doctor or treating clinician, had no subjective knowledge of any serious medical need on the part of Plaintiff to which she could have been deliberately indifferent. More importantly, however, Defendant Martin does *not* make treatment decisions regarding Plaintiff's treatment.

Whether Plaintiff's medical condition classifies as a "serious medical need" remains an open question. Having found that Defendant Martin was not deliberately indifferent to any medical need on the part of Plaintiff, however, there is no present need to resolve this issue.

Finally, having determined that Defendant Martin was not deliberately indifferent to any serious medical need of the Plaintiff, there is no need to address the issue of qualified immunity. For the reasons stated, Defendant Martin's Motion for Summary Judgment is ALLOWED, and Plaintiff's Cross Motion for Summary Judgment against the Defendant Martin is DENIED.

**D.     Defendants' Lazare, Brewer, and Jurdak's Joint Motion for Summary Judgment**

Defendants Lazare, Brewer, and Jurdak dispute Plaintiff's allegation that they were deliberately indifferent to treating Plaintiff's Hepatitis C. Defendants argue that they clearly followed the UMCH established protocol, and placed Plaintiff on the treatment list at the time that biopsy results indicated that it was appropriate to do so.[25] Because placement on the antiviral drug treatment is based on biopsy results, and Plaintiff's enzyme levels were stable and within the normal range until May of 2003, Plaintiff was not in need of a biopsy until that time.[26] When Plaintiff's enzyme levels elevated to an abnormal range on May 28, 2003, the Defendants ordered a liver biopsy on June 6, 2003.[27] Based on the biopsy results, the LSH recommended that Plaintiff receive combination therapy treatment.[28] Rather than ignore this recommendation, Defendants immediately placed Plaintiff on the treatment list.[29]

This court finds that Defendants were not deliberately indifferent to Plaintiff's serious medical needs. To the contrary, Defendants followed established protocol and treated Plaintiff regularly for his medical condition. Plaintiff, additionally, has not proffered evidence that Defendants had the required mental state to constitute deliberate indifference. Moreover, Plaintiff has proffered no evidence that Defendants intended to wantonly inflict pain. The record indicates, rather, that Plaintiff has not yet received his medication because there are other inmates with more

---

[25] Defs.' Mem at 11.

[26] Id.

[27] Id.

[28] Id.

[29] Id.

9

serious cases of the disease, who have a more pressing need for the medication. For the reasons stated, Defendants' Motion for Summary Judgment is ALLOWED. Correspondingly, Plaintiff's respective Motions for Summary Judgment against Lazare, Brewer, and Jurdak are DENIED.

AN ORDER WILL ISSUE.

/s/ Joseph L. Tauro  
United States District Judge